JEFFERSON COUNTY—HON. MILTON H. MERWIN, SURROGATE— June, 1860.

## HOLLEY *v.* CHAMBERLAIN.

*In the Matter of the Guardianship of* CHARLES CHAMBERLAIN, *a minor.*

In appointing a guardian of the estate of a minor, the best interests of the minor are alone to be consulted, and the surrogate is not restricted in his appointment to the relatives. He may appoint a stranger, who is shown to be competent.—*So held*, where all the relatives of the minor, excepting the mother, united in a consent to the appointment of the stranger.

The policy of the law is against the appointment of married women as guardians of the estates of minors. And where the mother of the minor is living with a second husband, though otherwise competent, she will not be appointed guardian of his estate. ·

Nathan Chamberlain, paternal uncle of the child, applied for the appointment of Elon K. Downer, as guardian of the estate of Charles Chamberlain, a minor, of the age of five years, whose father is dead, but his mother is living. All the competent male relatives of the child, being five paternal uncles and two maternal uncles, consented to this appointment. On the first hearing, the mother opposed the appointment, claiming that she should be appointed. It was then admitted that the mother had recently married, and was then the wife of Theron Holley.

L. J. BIGELOW, *for Petitioner.*

J. CLARKE, *opposed.*

THE SURROGATE.—No question is made as to the competency of Mrs. Holley, the mother, except that she is a married woman, whose husband is not the father of the child. No objection is made to Downer, except that he is not a relative. So that the question here is, whether the mother, who is living with a second husband, shall be appointed guardian of the estate of the child, or the person chosen by all the other relatives, including two brothers of the mother. The property seems to consist of about $100 personal, and real estate the annual rents and profits of which do not exceed $100.

In the absence of any appointment, where a minor has real estate, the mother would be guardian, with the rights of a guardian in socage (3 *Rev. Stat.*, 5 ed., 2, §§ 5–7); but this guardianship is superseded by the appointment of the surrogate. (*Ib.*)

Section 34, chapter 460, of *Laws of* 1837 (3 *Rev. Stat.*, 164, § 56), provides that in case a woman marries after being appointed an executrix, administratrix, or *guardian*, the sur-

rogate, on the application of any person interested, shall have power to revoke such appointment; and the same section provides for a revocation in case of incompetency by reason of drunkenness, improvidence, or want of understanding. Section 32 (3 *Rev. Stat.*, 159) provides that no letters of administration shall be granted to a " person who shall be judged incompetent by the surrogate to execute the duties of such trust by reason of drunkenness, improvidence, or want of understanding, nor to any married woman;" but where a married woman is entitled, they may be granted to her husband. Now the same reasoning that would make a married woman incompetent to be an administratrix, would apply in case of the guardianship of the estate of a minor.

Again, the 34th section above referred to gives power to the surrogate to revoke letters in certain cases of incompetency, naming them; and no doubt when those cases appear, it is the absolute duty of the surrogate to revoke. The section then says, that in case a woman marries, the surrogate shall have power to revoke. This, of course, must mean, that although the woman is not incompetent for any of the reasons stated in the first part of the section, yet if she marries, that of itself is a reason for her removal. Taking both these sections above cited together, they seem to me a strong argument against the right of a married woman to be appointed guardian of the estate of a minor.

2 *Kent's Com.* (8 ed., 236, note *c*), makes a distinction whether the mother is married or not, giving her the preference only when she is unmarried. But I do not find the authority on which it is based. It is there stated to be the usual order to appoint the mother first, if unmarried. Almost all the cases reported are where there was a contest for the guardianship of the *person* of the child. The question is but little discussed as to the guardianship of the estate.

The Court of Chancery did not confine the guardianship of the estate to the relatives, but placed the property where it would be best taken care of. (See *Bennet* v. *Byrne*, 2 *Barb. Ch.*, 216.) One guardian of the person may be ap-

pointed, another of the estate. (2 *Kent*, 227). The true interests of the infant are rather to be consulted than the interests or wishes of those who are contending for the guardianship. (*Bennet* v. *Byrne*, 2 *Barb. Ch.*, 216.) The discretion vested in the surrogate is not an arbitrary one. (*White* v. *Pomeroy*, 7 *Barb.*, 642; *Underhill* v. *Dennis*, 9 *Paige*, 202). Says JOHNSON, J., in *Williams* v. *Hutchinson* (5 *Barb.*, 123), "While the mother remains a widow she is bound to provide for her children, and is entitled to control them while under age, and to collect their earnings while in the service of others. But when she marries, her legal capacity is gone, and she can no longer control the persons, or property, or earnings, of her children."

The foregoing is about all the light I find in the books bearing upon this case, and it is exceedingly doubtful whether, in any event, a married woman should be appointed the guardian of the estate of a minor. The weight of authority, as well as the intent of the Legislature, would seem to discountenance the idea.

But let us consider what would be best for the interests of the child; for that should always, if possible, have a controlling influence.

The mother, even if unmarried, would be presumed to have less knowledge of business, less acquaintance with even the ordinary affairs of life, than a business man, and little or no experience in managing property. Mr. Downer, who is admitted to be a competent person, would, of course, in this respect, have qualifications superior to Mrs. Holley. The marriage of Mrs. Holley, even if not regarded by the law as a disqualifying circumstance, certainly cannot add to her competency. Marriage, for many purposes, disqualifies a woman; she is presumed to be under the influence of the husband, more or less. He is not a disinterested party; and I presume that in such cases the appointment of the husband as guardian would not ordinarily be asked for; or, if asked, not made.

It is suggested that if the mother is appointed, the property

of both can be better managed together. It is not before me what property the mother has, but I doubt the propriety of mixing the property in its management. But if the guardian to be appointed should think it best to have the property managed together, it can of course be done if the mother so choose; and if the mother was appointed, the property would be kept together only as long as she chose to have it.

I do not, on the whole case, see how I can come to any other conclusion, than that it would be best for the interests of the child to have Mr. Downer appointed guardian of his property. This, of course, will not interfere with the maternal rights of the mother, as guardian of the person of the child. She will take care of him, and, whenever necessary, receive from the guardian sufficient of the annual rents and profits of the property to maintain and educate the child.

Letters of guardianship of the estate of the minor until he arrives at the age of fourteen years, and until another guardian be appointed, are therefore granted to Mr. Downer.