KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.— April, 1880.

MATTER OF DE MARCELLIN.

*In the matter of the guardianship of* MARY LOUISE DE MARCELLIN.

In a contest between the stepmother and the aunt of an infant for letters of guardianship, where the infant has no property and the stepmother has nothing except what she can earn, but the aunt has an income for life of $1,300, the guardianship will be awarded to the stepmother to avoid the separation of the infant from a brother in the charge of the

stepmother, and to carry out the wish of the infant's deceased father.

APPLICATION for letters of guardianship. The facts appear in the opinion.

THE SURROGATE.—In this case the stepmother and the aunt of the infant separately apply to be appointed her guardian.

The infant is nine years of age, and has no property, and the stepmother has nothing except what she can earn.

She is, however, accustomed to work, having assisted her husband in supporting the family. She has friends who are willing to assist her in finding employment, and she seems to be confident that she will be able by her exertions to support herself and family, which, as I understand from the evidence, includes another child besides the infant above mentioned ; whether that other child is her own or a stepchild does not clearly appear. The aunt, on the other hand, has an income for life amounting to a little over $1,300 a year, from which, however, she is expected to assist her brother to some extent.

If the decision of this application were to depend exclusively on the relative means of the two applicants, the aunt would, unquestionably, be entitled to the preference ; but there are other considerations of great importance.

In the first place, the infant would be separated, and to some extent estranged, from her brother or sister, as the case may be, by confiding to the aunt the care of bringing her up. That such a result should be avoided if possible must be apparent without argument. (Cozine v. Hone, 1 Bradf., 145.)

Then again, the father seems to have had some anxiety on this subject, and repeatedly expressed the desire not only that his children should remain under the care and tuition of his wife, but that they should not be brought up by the aunt, and this wish was so uppermost in his mind that he gave expression to it even on his death-bed. The law shows so much regard for the wish of the father on this subject that it gives him the absolute power to appoint the guardian of his children by deed or last will. (2 *R. S.*, 150, § 1.)

And all the authorities agree that the expressed wish of the parents of a child, and particularly of the father, should have great weight with the court in the appointment of a guardian. (Underhill *v.* Dennis, 9 *Paige*, 208 ; Cozine *v.* Hone, 1 *Bradf.*, 145 ; Foster *v.* Mott, 3 *Bradf.*, 412 ; Bennett *v.* Byrne, 2 *Barb. Ch.*, 220 ; Matter of Pierce, 12 *How. Pr.*, 534 ; *Schouler's Domestic Relations*, 417.)

The infant herself expresses the desire to remain with her stepmother, with whom she has lived since she was six years old, and whom she no doubt loves as she would her own mother.

A proper consideration for the affections and attachments of the infant, as well as for the expressed wishes of the deceased father, requires that I should appoint the stepmother.

The only objection to her appointment arises from her straitened circumstances, but this objection is met to a great extent by what has been said before on the subject, and her ability to support the infant receives strong confirmation from the fact that the infant's father, knowing all the circumstances of the case, desired that his

wife should retain the care and custody of his child. It may be proper, however, under the circumstances,. that the bond which the guardian is to give on being appointed should provide expressly for the proper support and maintenance of the infant.

That question, as well as the one as to the amount of the bond, can be disposed of on the settlement of the order appointing the guardian.

Ordered accordingly.