## Guardianship of THEODORA F. HANSEN, Minor.

### [No. 4,243; decided January 26, 1886.]

Guardian—Eligibility of Nonresident.—Where the mother of a minor is a nonresident, she is legally incapable of obtaining letters of guardianship over the child in this state.

Guardian—Eligibility of Married Woman.—Where the mother of a minor is a married woman, she is ineligible to become guardian.

Guardian—Choice of Child.—A child ten years of age who has been educated carefully and is a bright girl may be capable of expressing "an intelligent preference" for a guardian, which the court will consider.

Guardian—Best Interests of Ward.—In awarding the custody of a minor, or appointing a general guardian, the court is guided by what appears to be for the child's best interests as to its temporal, mental and moral welfare.

Guardian.—Where Application is Made for Guardianship of a Minor, if there is no person before the court who is legally entitled to the guardianship, it must be shown, to justify a resistance of the application, even by the nonresident mother, that no guardian is needed for the child, or that the applicant is an unfit person.

Guardian—Stranger Preferred to Mother.—Where a mother, after desertion by her husband, committed her child to the care of the petitioner, agreeing that he should adopt it (which he never legally did), and afterward, under judgment in an action for divorce by the mother, the child was awarded to petitioner; and the petitioner kept the child for nearly six years, until the mother wanted to get the child again, when he applied for guardianship of her, the mother opposing it, and the divorce decree being modified pending the guardianship proceedings, so as to remit the question of custody to the guardianship department; and during all the period aforesaid petitioner and his wife treated and educated the child as if she were their own; and the mother is legally incapable and ineligible to become guardian, being a nonresident and married; and the child has expressed a preference for petitioner, and it would not be for the child's best interests to place her anywhere but with petitioner, guardianship should be granted to petitioner; but so restricted that the mother may communicate with and visit the child.

Guardianship—Interest of State.—In the matter of the guardianship of minors, the state is interested in having beneficial influences surround and impress its future citizens.

In the matter of the guardianship of the above minor, it appears that letters of guardianship were granted to J. W. Baldwin, on May 13, 1885, after the usual notices required by the statute to relatives within the state (the mother, it would seem, being absent therefrom). Immediately after the granting of these letters, and on May 15, 1885, affidavits and a petition, on behalf of the child's mother (Frances E. Fairbanks), were filed, for a revocation of the letters to Baldwin; and on May 18, 1885, an order to show cause was made, and a citation issued against said Baldwin. Thereafter, it would seem, from the record in the case, that proceedings were taken before Judge Coffey, as if there had never been a grant of guardianship to Baldwin; this course no doubt having been deemed necessary or advisable, in view of the claim of the child's mother, appearing of record, that the divorce court, referred to in Judge Coffey's opinion, had never surrendered or lost jurisdiction over the minor; and in furtherance of the modification (subsequently had) of the decree of the divorce court, remitting the question of the child's custody to the determination of the probate department of the court. Two written requests of the child, both in favor of Baldwin, appear of record, filed on June 6th and December 24, 1885. Each of them is entirely in the child's handwriting, addressed to the judge, giving the name and residence of the child, and expressing its wish to stay with "Papa Baldwin."

M. A. Dorn and P. B. Nagle, for applicant Baldwin.

Thos. P. Ryan, for the mother, Mrs. Fairbanks.

COFFEY, J. This application has been a long time before the court, but the delay in deciding it is not due to the court, except so far as the disposition to come to a correct conclusion has induced deliberation; and in that regard the court has not gone beyond the constitutional limitations.

The facts are, as adduced in evidence: The minor was born July 5, 1875, the parents being Theodore E. Hansen and

Frances E. Hansen, who had contracted marital relations in September, 1874; the parents did not live happily together, and after a while parted, the husband deserting the wife, as she alleges, leaving with her two children, one of them, the minor, Theodora, aged at that time four years, September, 1879; the mother being in poor circumstances, under the advice of a friend, gave the custody of the child to J. W. Baldwin, the applicant here, and agreed that he should adopt the child; but he did not do so according to law, and subsequently the mother claims that she repented her agreement, and desired to regain the custody of the child; but upon this point there is a conflict of evidence, as Baldwin denies that the mother ever expressed to him a change of mind, but, on the contrary, he swears she always caused him to believe, until the year 1885, that he could have the sole custody of said minor, and that the child has been reared and educated by himself and wife for six years, and that she has received the constant care and attention of his wife, whose sole companion she has been during such period; that they have no child of their own, and that they have become greatly attached to said minor, who reciprocates their attachment; and that in sickness and in health they have treated the minor as if she were their natural born child. The uncontroverted fact is that the applicant, Baldwin, received the child from her mother, and has retained the custody up to this time. On the 11th of March, 1885, the minor's mother commenced an action for divorce in this county against the minor's father, Theodore E. Hansen, and on the 10th of April, 1885, the superior court, department one, Wilson, Judge, rendered a decree of divorce, and awarded the custody of said child to said Baldwin until the further order of the court; subsequently the lady was married to Mr. Fairbanks, a respectable gentleman, residing and doing business in the state of Nevada, where she has since continued to reside. The decree of the court in the divorce suit was modified pending these proceedings, with respect to the custody of the child, by remitting to this department that question.

There was but one application for guardianship—that preferred by Baldwin; the mother of the minor is a nonresident,

and incapable under the code by reason of such nonresidence; and, moreover, ineligible, because she is a married woman: Code Civ. Proc., sec. 1751. She is here, however, simply resisting the application of Baldwin, in whose custody the child is in the first place by her own act, and afterward by the order of the court in the action for divorce.

The child is now ten years of age, and has been examined by the court in the manner customary in such cases, and has orally and in writing twice expressed her preference as to custodians—June 6, 1885, and on December 24, 1885—each time declaring her desire to remain with Mr. Baldwin; these written requests or expressions of preference are filed among the papers in the case, as is usual in such matters.

For six years the child has lived in that family, and has been treated tenderly and educated carefully. She is a bright girl, and capable of expressing "an intelligent preference," in the sense of the statute (Civ. Code, sec. 246), which preference the court may consider.

In awarding the custody of a minor, or in appointing a general guardian, the court is to be guided, as a paramount consideration, by what appears to be for the best interests of the child, in respect to its temporal and its mental and moral welfare. The mother is a nonresident and a married woman, and is beyond the jurisdiction of this court in this proceeding, and if there were no other consideration, she could not be considered as an applicant; and, in order to justify her resistance to this application, it should be shown that no guardian is needed, or that the applicant, Baldwin, is an unfit person to be appointed guardian.

It appears from the evidence that the Baldwins, to whose custody this child was primarily committed by the mother, and subsequently confirmed by the divorce court, have a comfortable home; they have had Theodora for six years continuously; she is attached to them and they to her; she knows no home but theirs; their care and management of her have been unexceptionable; if she were to leave them she could gain no better home temporarily, mentally or morally, while great risks would be run by a change; she would have to part from her present friends and find new associations; to be summarily wrested from the only home life she

has ever known, and separated from influences that have been beneficial; and the state is interested in having such influences surround and impress its future citizens.

This is substantially the sentiment and language employed by my predecessor on this bench in the Guardianship of Irma Linden (Myrick's Reports, p. 221), which only follows the current of decisions in similar cases, such as Cozine v. Horn, 1 Bradf. 143, Foster v. Mott, 3 Bradf. 409, Holley v. Chamberlain, 1 Redf. 333, Burmester v. Orth, 5 Redf. 259, and Macready v. Wilcox, 33 Conn. 321. These and numerous other cases that might be cited to the same purport leave no room for doubt as to the law.

However hard the conclusion may seem to the mother, the Court must find from the evidence that it is necessary a guardian should be appointed, and that the gentleman to whose care she six years ago consigned the child, and in whose custody the judge who decided the divorce suit ordered the child should remain, and with whom such child desires to remain, should be appointed the guardian; and it is so ordered.

Let a decree be prepared according to the conclusion herein reached, with the restriction that the mother shall from time to time communicate with and be permitted to visit the child, and the bond of guardian is fixed at one thousand dollars.

For Authorities bearing upon the decision in the principal case, see Guardianship of Smith, ante, p. 169, and note.