(92 Misc. Rep. 89)

### In re CROSS' GUARDIANSHIP.

(Surrogate's Court, Bronx County. October, 1915.)

1. GUARDIAN AND WARD ⬤―10―APPOINTMENT―GROUNDS.
   In appointing a guardian for the person and estate of an infant, the court should be guided by consideration of what is to the infant's best interest.

   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 23–33; Dec. Dig. ⬤―10.]

2. GUARDIAN AND WARD ⬤―10―APPOINTMENT―GROUNDS.
   A mother left her daughter in the custody of the petitioner, executing a memorandum that she desired her there to remain until she claimed her. In about a year the mother died, not having claimed the child. There was some evidence that the mother had stated she desired her

sisters to have the custody of the infant. The petitioner, who was much better off than the maternal aunts, offered to care for the infant as he had done in the past. The petitioner was of the Catholic faith, as were the parents of the infant; but his wife and family were of another faith. *Held*, that where the petitioner offered to have the infant instructed in the Catholic faith, and he was able to give the infant a better home, his application for appointment as guardian should be granted.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 23–33; Dec. Dig. ⬬10.]

In the matter of the guardianship of Margaret Cross. Application by one Vaupel for appointment as guardian of said infant's person and estate, opposed by maternal aunts of the infant. Petition granted.

Hirleman & Vaughan, of New York City, for petitioner.
Daniel V. Sullivan, of New York City, for respondents.

SCHULZ, S. The petitioner, having the care and custody of an infant, and being the person with whom she resides, although not related to her, applied for his appointment as guardian of her person and estate during her minority. Upon the return of the citation, two maternal aunts of the infant opposed the application. There is no allegation by the respondents that the petitioner is not a proper person to have the guardianship of the infant; but they claim such right of guardianship on the grounds of their relationship to the infant, of their ability to care for her, and of their desire that she be brought up in the religious faith of her deceased mother.

The events which resulted in the petitioner having the present custody of the infant are as follows:

In March, 1913, the mother of the infant, who was a widow, entered the employ of the petitioner as a domestic, bringing with her the infant in question, then about 4½ years of age. She remained in the employ of the petitioner until July, 1914, at which time, being stricken with illness, she went to a hospital; the infant remaining in the care and custody of the petitioner and his family, with whom she (the mother) left a memorandum reading as follows:

"July 28 1914

"It is my wish that my little daughter Margaret reiaman (sic) in the charge of Mr and Mrs Vaupel until my return to claim her        Ellen Cross."

She remained at the hospital until about May, 1915, and then went to live with the sister, one of the respondents in this proceeding, who at that time, with her husband, occupied a furnished room. There she resided for about seven or eight weeks, and then went to another hospital, where she died on June 19, 1915.

[1] Upon applications of this kind it is well settled that the court should be guided in reaching a determination by considering what disposition is for the best interests of the infant. People ex rel. Pruyne v. Walts, 122 N. Y. 238, 25 N. E. 266; Matter of Annan, 74 Hun, 19, 26 N. Y. Supp. 258; Foster v. Mott, 3 Bradf. 409; Ullman v. Ullman, 151 App. Div. 419, 135 N. Y. Supp. 1080.

[2] The petitioner lives in a private house, which he owns, in a

pleasant residential section of the borough of the Bronx. His family consists of himself, his wife, three daughters, and one son; his children all being of full age. He is in business for himself, conducting a billiard parlor in this city, and testifies that his income from his business is from $35 to $50 per week, and that in addition he has an income of from $400 to $500 a year from other investments. The child, during the illness of the mother and her absence from the home of the petitioner, and up to the present time, has remained at the home of the latter, and, from the evidence before me, I am satisfied that not only the petitioner, but the other members of his family, have become deeply attached to her. She has been attending public school in the neighborhood for about two years, and has been supported and maintained by the petitioner at his own expense, for which he asks no remuneration, in a manner with which the respondents find no fault. He states that he is willing that the property of the infant, which amounts to about $200 and consists of her mother's estate, with the exception of the sum of $50, being the funeral expenses of the mother, be kept intact for the infant, and that he will defray the expense of her support, maintenance, and education without applying any of her funds to the same.

One of the respondents resides in the borough of Brooklyn, has two infant children of her own, and with her husband and children occupies an apartment of four rooms in a tenement house. Her husband is employed as a motorman and earns $20 per week, which, so far as the evidence discloses, is the sole income of the family. The other respondent is childless, and occupies an apartment of three rooms in a tenement house in the borough of Manhattan, and her husband earns the sum of $15 per week, which appears to constitute his sole income. Both of the aunts also expressed their willingness that the infant's property be conserved for her, and I am satisfied that the respondents are people of the same good character as the petitioner.

That in proceedings of this character the entire matter rests in the discretion of the surrogate is well settled and requires no citation of authority; and it is a discretion weighted with great responsibility, and which must be most carefully exercised in view of its importance to the infants involved, who are wards of the court and entitled to its fullest protection. That the decision of the court must be disappointing to one of the two parties, both of whom I am satisfied are actuated in going to the expense and trouble which this proceeding has entailed solely by their love for this infant, is to be regretted, but unavoidable. The feelings of the parties must give way to the cardinal principle that the welfare of the child is the first consideration of the court.

Considering, then, the child's welfare from a material standpoint only, I am satisfied that it would not be advisable to tear her from the home which she has now enjoyed for upwards of two years, and from the family circle of which she has become a beloved member. Are there, then, any reasons which should move this court to deny the petition and change the custody of the child under these circumstances? There is testimony that the mother, three weeks prior to her death,

told one of the respondents that she wished this respondent to have the custody of the infant in the event of her death; but it also appears uncontradicted that during all of this time the infant resided with the petitioner, and, although the child and one of the petitioner's daughters visited the mother at the home of the respondent on numerous occasions, there is no evidence to show that the mother ever requested that the custody of the child be transferred to the aunt, other than that stated.

I do not feel warranted upon this evidence alone in denying the petition, bearing in mind the fact that for some years there had been strained relations between the mother of the infant and the two respondents, and also the written evidence of her desire to have the child remain with the petitioner and his wife. The latter, while not showing conclusively that she wished the child to remain with the petitioner in the event of her death, indicates at least that she felt that the infant would be safe in the custody of the petitioner until her return, which, however, never occurred. While it is true that the wishes of parents are given careful consideration by the courts in proceedings of this character (Underhill v. Dennis, 9 Paige, 202), even these, when fully proved and substantiated, are not followed when the court is satisfied that the welfare of the child demands a different disposition. Thus in Foster v. Mott, supra, the court in appointing the grandfather of an infant as against the wishes of the father that his brother be appointed said:

"Great respect, however, is to be paid to the wishes of the deceased parents, even where they have not been expressed in a definite or legal form, but still, after giving them every proper consideration, as a proper element to influence the mind of the judge, we come back to the question of what is best for the welfare of the child."

To the same effect are Matter of Lamb's Estate, 139 N. Y. Supp. 685; Cozine v. Horn, 1 Bradf. 143.

Relationship to the infant is also urged, but the trend of authority is that, while relatives will be preferred to strangers, all things being equal (Smith v. Smith, 2 Dem. 43), such preference will not be given unless the court is satisfied that the welfare of the infant will be promoted thereby. Code Civ. Proc. § 2649. In Matter of Vandewater, 27 Wkly. Dig. 314, affirmed 115 N. Y. 669, 22 N. E. 174, the Court of Appeals says:

"Whether a guardian shall be appointed, and whether he shall be selected outside of the relatives of the infant, is a matter of discretion committed to the surrogate."

Other cases in which this principle is recognized are People ex rel. Brush v. Brown, 20 Wkly. Dig. 516; Matter of Lamb's Estate, supra; Holley v. Chamberlain, 1 Redf. 333; Burmester v. Orth, 5 Redf. 259.

The final ground of opposition, however, is one which has caused me the gravest concern. It appears that the petitioner is of the same religious faith as the mother of the infant, his wife is of another faith, and his children have been taught in the faith of the mother; and the respondents contend, and I believe justly and properly, that the child should be brought up in the faith of her deceased mother. Dif-

ferences in religious belief between applicants for appointment as guardian and the infants for whose guardianships they prayed have been under consideration on numerous occasions, and have received and are entitled to receive serious consideration in solving questions of guardianship. The infant should receive instruction in the faith of her parents, because it must be assumed, no evidence to the contrary being submitted, that such would have been the wishes and desires of the parents.

If, however, the temporal welfare of the child can be secured, and her religious training in the faith of her mother also be directed, then I believe that the court should follow the course which would have such a result. The petitioner in this proceeding expressed his willingness to have this child brought up in the faith of her deceased mother, and the court is not without precedent showing that the appointment of a guardian may be conditioned upon the infant receiving instruction in a specified religious faith. Matter of Lamb's Estate, supra; Matter of Mancini, 89 Misc. Rep. 83, 151 N. Y. Supp. 387.

This being so, I reach the conclusion that the present custody of the infant should not be changed, and the petitioner should be appointed the guardian of her person and estate, upon the conditions, however, that the child receive religious instruction and training in the faith of her deceased mother until she arrives at years of discretion, and that the petitioner permit the respondents to visit the child at such times as may be reasonable.

In making this disposition, I do not criticize the action of the respondents in opposing this application. I believe that their motives were of the highest, and were actuated by an unselfish interest in this orphan child which merits sincere admiration. In awarding guardianship to the petitioner, it is to be hoped that the controversy between the petitioner and the respondents, which I trust has now been concluded, and which was caused by the love they all have for the infant, may leave no ill will between them, but rather may result in a feeling of mutual esteem, to the end that the infant may have the benefit of being under the observation not only of her legal guardian, but also of her two aunts, all acting in accord. The petition is granted upon the conditions mentioned.

Petition granted.