---

(93 Misc. Rep. 394)

## In re CURTIN et al.

### (Surrogate's Court, Bronx County. January, 1916.)

1. GUARDIAN AND WARD ⟨⟩13(4)—PROCEEDINGS FOR APPOINTMENT—EVIDENCE.
   In a proceeding for appointment of a guardian of an infant, evidence *held* insufficient to show that the petitioner was related to the infant.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 45; Dec. Dig. ⟨⟩13(4).]

2. GUARDIAN AND WARD ⟨⟩13(4)—APPOINTMENT OF GUARDIAN—BURDEN OF PROOF.
   In a proceeding for appointment of a guardian of an infant, the burden is upon petitioner to prove her status as a relative of the deceased father of the infant.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 45; Dec. Dig. ⟨⟩13(4).]

3. GUARDIAN AND WARD ⟨⟩10—APPOINTMENT OF GUARDIAN—RELATIONSHIP.
   Other things being equal, relatives are to be preferred to strangers in applications for appointment of a guardian of an infant.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 23–33; Dec. Dig. ⟨⟩10.]

4. GUARDIAN AND WARD ⟨⟩13(4)—APPOINTMENT OF GUARDIAN—EVIDENCE.
   In a proceeding for appointment of a guardian, evidence *held* insufficient to show that the appointment of the petitioner would be in accordance with the wishes of the deceased father of the infant.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 45; Dec. Dig. ⟨⟩13(4).]

5. GUARDIAN AND WARD ⟨⟩10—APPOINTMENT OF GUARDIAN—INTERESTS OF INFANT.
   Relationship and even the expressed desires of the parents give way to the rule that the welfare of the child must be the guide in matters affecting the child's guardianship.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 23–33; Dec. Dig. ⟨⟩10.]

6. GUARDIAN AND WARD ⟨⟩10—APPOINTMENT OF GUARDIAN—POWER OF COURT.
   Under the express provisions of Code Civ. Proc. § 2649, the court is not limited to naming the person as guardian for whose appointment the petition prays.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 23–33; Dec. Dig. ⟨⟩10.]

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Proceedings for the appointment of a guardian of Michael Curtin, Jr., and another.  Guardians appointed.

M. S. Schector, of New York City, for petitioner.
James S. McDonogh, of New York City, for respondent.

SCHULZ, S.  Two proceedings have been brought by the petitioner, one involving the guardianship of Michael Curtin, Jr., and the other that of Catherine Curtin.  The infants are the son and the daughter, respectively, of Michael B. Curtin, deceased, and the facts in each proceeding are the same; hence, I am disposing of them together. Their mother died about seven years ago, at which time their father with the infants went to board with the petitioner and her husband, who had been neighbors of the decedent and his wife.  About three years ago the husband of the petitioner died, but the infants with their father continued to reside with the petitioner up to the time of the death of the father.  During this time, and in the month of August, 1915, the petitioner remarried.  It has not been contended that the petitioner was other than kind in her treatment and care of the infants while they boarded with her, and she concedes that the deceased father paid the sum of $40 per month for board and lodging in her home. Prior to the commencement of these proceedings a paternal aunt of the infants in question and of David Curtin, another infant child of the decedent, filed petitions praying for the appointment of David Curtin, a paternal uncle of the infants, as the guardian of the persons and estates of the three children, two of whom only are involved in the matters now under consideration.  All of the other relatives of the infants within the state consented to such last-mentioned appointment. This paternal uncle is now the respondent in the two proceedings under consideration.

[1] Being unable to decide the matters upon the papers, the court directed a hearing, which has been concluded.  Upon that hearing, the petitioner testified that she believed she was a third cousin of the father of the infants, but was unable to state how the relationship arose.  The uncles and aunts of the infants testified that there was no such relationship.  One other witness produced by the petitioner says that the decedent introduced the petitioner as his cousin.  Other than this evidence, there is nothing to show any relationship between the petitioner and the infants.

[2] The burden of proving her status in the proceeding as a relative of the decedent was, in my opinion, upon the petitioner.  Matter of Hamilton, 76 Hun, 200, 27 N. Y. Supp. 813.  This burden she has not sustained, and I am unable to find upon the evidence that any relationship existed between the petitioner and the infants.  If my conclusions, therefore, are correct to this extent, the controversy is between the relatives of the infants, on the one hand, and one not related to them, on the other.

[3] The law is well settled that all things being equal, relatives are to be preferred to strangers in applications of this character.  Ledwith v. Ledwith, 1 Dem. Sur. 154; Smith v. Smith, 2 Dem. Sur. 43; Morehouse v. Cooke, 1 Hopk. Ch. 226; Matter of Lamb (Sur.) 139

N. Y. Supp. 685. I conclude, therefore, that the petitioner should not be preferred upon the ground of relationship.

[4] The petitioner also claims the right to be appointed upon the ground that such appointment would be in accordance with the wishes of the deceased father of the infants. There is testimony by the petitioner to the effect that the mother, and later the father of the infants, expressed their desire that the petitioner should look after their children. As against her contention there is testimony of two aunts and an uncle of the infants to the effect that the deceased father desired the uncle of the infants to take care of his children in case of his death, and that he anticipated taking the two infants to one of their aunts who resides in the city of Syracuse.

In weighing the testimony of the petitioner and the relatives, I must, of course, consider their respective interests in the matter, and see if there is any corroboration. The evidence as to the wishes of the parents, as contended for by the petitioner, rests solely upon her own testimony; but the testimony of the relatives, indicating a contrary desire, finds support and corroboration from the following: There appears in evidence a letter written by the deceased father to his sister which, in my opinion, negatives the contention of the petitioner. In that letter dated August 18, 1915, he states that he would like to send the children home when they are big enough to go to school, so that his mother would take care of them. There is also the testimony of the attorney of record for the respondent, to the effect that the father of the infants sent for him a few days before his death and told him that he wanted David (his brother) to look after his children, and that he was going to send the children up to Syracuse to his sister Nora. Another witness, who was a comrade of the deceased father in the fire department, testified that the decedent told him that he would like to take the children to his sister Nora in Syracuse; that she had a house there, and that it would be a very nice place for the children, and that he was dissatisfied with the place where he was stopping at that time, which was at the home of the petitioner. He was about to take a civil service examination, and the witness, his friend, advised him not to send the children to his sister until after he had completed his examination, as the separation from the children might affect him and in that way upset him. He died, however, before the day of the examination arrived. The letter above referred to and the testimony of these two witnesses, both reputable men, one an attorney of this court and both, so far as I can ascertain, entirely disinterested, except that one is the attorney for the respondent, appear to me to strongly corroborate the testimony of the respondent and to negative that of the petitioner. It has been held that weight should be given to the wishes of deceased parents in deciding questions of guardianship (Underhill v. Dennis, 9 Paige, 202; Smith v. Smith, 2 Dem. Sur. 43; Matter of Pierce, 12 How. Prac. 532), and, as the evidence of such express wishes appears to me to clearly preponderate in favor of the contention of the respondent, I reach the conclusion that upon this ground also the petitioner should not receive a preference.

[5] There is, however, one underlying principle which must be

considered before finally reaching a conclusion in matters of this character. Relationship, and even the expressed desires of the parents, must give way to the rule that the welfare of the child in the last analysis must be the guide in matters affecting the latter's guardianship. People ex rel. Pruyne v. Walts, 122 N. Y. 238, 25 N. E. 266; Ullman v. Ullman, 151 App. Div. 419, 135 N. Y. Supp. 1080; Matter of Cross, 92 Misc. Rep. 89, 155 N. Y. Supp. 1020, and cases cited.

The petitioner is married, has two minor children of her own, and lives with her husband in an apartment of five rooms in the city of New York. David Curtin, the uncle of the infants, also has a family consisting of his wife and children, and resides in the city of New York. Margaret Curtin, an aunt of the infants, is a trained nurse by profession and is unmarried, and Nora C. Kennedy, the remaining paternal aunt, being the one who resides in Syracuse, is married and childless. Considering the matter, therefore, from the standpoint of the welfare of the infants, I reach the conclusion that the petition should not be granted upon this ground. It necessarily follows that the applications of the petitioner must be denied.

[6] With regard to the petition filed by Nora C. Kennedy for the appointment of David Curtin as guardian of said infants, I believe that the court is not limited to naming the person for whose appointment the petition prays. Code Civ. Pro. § 2649; Ledwith v. Ledwith, 1 Dem. Sur. 154; Matter of Wyckoff, 67 Misc. Rep. 1, 124 N. Y. Supp. 625; Estate of Van Dewater, 27 Wkly. Dig. 314.

The children, in addition to their personal property located in the city of New York, it appears, will become entitled to share in a pension which will be paid to them in this city. For that reason I think it advisable that David Curtin, the uncle, should be named as the guardian of their estates, and he will be appointed accordingly. From the testimony before me, I think that the best interests of the infants require that they should be in the custody and care of their paternal aunt, Nora C. Kennedy, who resides in Syracuse, which from all the evidence before me I conclude was the wish of their deceased father, and she will accordingly be appointed guardian of their persons

Decreed accordingly.