PEOPLE ex rel. STERNBERGER v. STERNBERGER et al.

(Supreme Court, Appellate Division, First Department.    December 11, 1896.)

1. PARENT AND CHILD—SEPARATION—CUSTODY OF CHILDREN.
    An agreement between a husband and wife, who are not divorced, to live apart, is not essential to the existence of a "state of separation" (2 Rev. St. p. 148, §§ 1, 2), so as to entitle the wife to maintain habeas corpus proceedings against her husband to have the custody of the infant children awarded to her.

2. SAME—CAUSE OF SEPARATION.
    Under Rev. St. p. 148, §§ 1–3, providing that, where a husband and wife, having a minor child, live in a state of separation without being divorced, the wife may apply for a writ of habeas corpus to have the custody of the child awarded to her, it is sufficient for a wife to show that she is justified on moral grounds in living separate from her husband, though these grounds may not be sufficient to support a decree of divorce.

3. SAME—AWARD TO MOTHER—EVIDENCE.
    A woman living apart from her husband is entitled to the custody of her infant children, as provided by 2 Rev. St. p. 148, §§ 1–3, where she is refined and educated, and has ample means to support the children, and was compelled to leave her husband on account of the violence and foulness of his language to her, and indecent acts performed by him in the presence of herself and minor children, though he is naturally of a good disposition, and his language and acts were caused by his belief that she sympathized with her father, between whom and himself great bitterness existed.

Appeal from special term, New York county.

Application by Birdie S. Sternberger against Louis Sternberger and another for writ of habeas corpus for possession of her children. From an order denying the writ, and committing the children to the custody of defendant Louis Sternberger, their father, relator appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

Joseph H. Choate, for appellant.
George Zabriskie, for respondents.

PATTERSON, J.   The relator in this proceeding is the wife of the respondent Louis Sternberger.   Since November, 1895, they have lived apart, the wife having then separated from her husband by withdrawing from his home and taking up her abode at the house of her father.   There are two children of the marriage of the relator and her husband,—one a girl,. now in her eighth, and the other a boy, now in his seventh, year.   The relator, on leaving her husband's house, took both children with her.   On the 18th of November, 1895, the respondent Louis Sternberger took his son into his own custody and away from the mother, who thereupon began this proceeding, in which, although in the beginning directly relating to the son only, it is agreed the court shall determine to which of the parents the custody of both children shall be committed; they in the meantime, and by arrangement of the parties, remaining with their mother. The proceeding was initiated by the relator obtaining a writ of habeas corpus under the provisions of 2 Rev. St. p. 148, §§ 1–3, by which it is enacted that, "when any husband and wife shall live in a state of separation, without being divorced and shall have any minor child of the marriage, the wife [by the domestic relations law of 1896, passed after this proceeding was begun, the provision is is extended to the husband also] if she be an inhabitant of this state, may apply to the supreme court for a habeas corpus to have such minor child brought before it," whereupon "the court on due consideration may award the charge and custody of the child so brought before it to the mother, for such time, under such regulations and restrictions and with such provisions and directions as the case may require," and "at any time after the making of such order the supreme court may annul, vary or modify the same."

This law has stood upon the statute book for nearly 70 years, and its provisions have been invoked quite frequently by wives living apart from their husbands, and seeking judicial sanction for the custody and control of their infant children.   In none of the reported cases has any question ever been raised requiring an interpretation of the words, living "in a state of separation," as those words are used in this statute.   But now, for the first time, it is earnestly argued that the remedy afforded by this enactment is not open to a wife unless her separation from her husband without a divorce is one resulting from some arrangement or treaty placing the parties in the situation of assenting to a "state" recognized by law, and technically defined and established.   No authority is cited to support that novel and strained construction.   The statute deals with a condition, and with a condition alone.   It takes the parties as it finds them,—husband and wife living separated, without a judicial decree either of absolute or what is sometimes called a limited divorce.   Its evident original purpose was to give a wife so situated a remedy which theretofore she did not have.   It does not confer an absolute right, but a mere remedy by means of which she can seek the aid of the court, in the exercise of its purely discretionary power, to confide to her, for her child's welfare, the temporary charge and custody of that child, in curtailment of what was then regarded to be, and doubtless was, the common-law right of the father to the

possession of the persons of his minor children. The learned and discriminating judge who wrote for the court in the case of People v. Brooks, 35 Barb. 89, has well said:

"This statute does not declare on what grounds the court shall proceed, but confides the whole matter to its discretion; and hence the occasion, cause, and circumstances of the separation, and the relative merits and demerits of the parties, may be taken into account."

If the separation must result from agreement, what need can there be of investigating the causes of the separation? There would be what Judge Cowen considered "a kind of divorce which the courts cannot very well gainsay at this day." People v. Mercein, 3 Hill, 411. It would suffice that the parties had willed it to be so, and the question of the relative fitness of the parents would alone remain to be determined, in connection with that of the welfare of the child. In none of the cases has it ever been intimated that the separation must be an agreed one, and in none of them has the writ been refused on the petition of the wife who has left her husband without his consent, but upon provocation, and for some reasonable cause. The strongest advocates of the right of the husband have never suggested such an interpretation of the statute. Judge Nelson, in People v. ———, 19 Wend. 16, commenting on the statute, expresses a doubt, applying only to its intention, "when the wife withdraws from the protection of her husband, and lives separate from him without any reasonable cause," and declares that the court should not award the custody of children to a mother who "had wrongfully and without pretense of excuse abandoned her family and the protection of her husband"; and he admits that "ill usage" of the wife, or consent, would entitle the wife to the favorable judgment of the court. The general deduction to be drawn from all the cases is that the court acts upon the fact of separation, but requires that the petitioning wife shall show meritorious cause for leaving her husband, and, when that is shown, the foundation is laid for the exercise of the delicate discretionary duty imposed upon the supreme court by the statute.

It is further urged that, in the disclosure of merits connected with the wife separating herself from her husband, a case must be made out sufficiently strong to authorize a decree for some one of the causes mentioned in the statute relating to divorces. The learned judge in the court below adopted that view, and said, in his opinion:

"If the facts in the case would not warrant the court in granting her a separation, I do not think that they are sufficient to warrant her to take her husband's children from his house."

This limitation upon the operation of the statute reads into it a condition, not only foreign to its purpose, but entirely at variance with that purpose. It would here compel the petitioning wife to present to the court all such convincing proofs as would be strictly required to make out a case for separation; that is to say, to show that she is entitled to a decree which, in a formal action, the court would be compelled to make, whereas, in the particular proceeding by habeas corpus, the action of the court is to be purely discretionary upon the same state of facts. The construction contended for

would make the statute read, that the wife, living in a state of sep-
aration without a divorce, may apply for the writ on showing that
she is entitled to a divorce.   The nature of the power conferred upon
the court; the fact that it is discretionary, and does not compel the
court to act otherwise than in its judicial discretion; the super-
added consideration that that discretionary action relates merely to
the temporary custody of the children, and that it is subject to be
annulled or varied or modified at any time,—all go to show that the
court is to deal with proceedings of this character upon evidence
directed to establishing that, for the benefit and welfare of the chil-
dren, their custody may be for a time committed to a wife living
separate from her husband, under such circumstances as furnish
some reasonable ground for her refusal to continue to live with him.
This view of the subject finds support in authority.   Davis v. Davis,
75 N. Y. 221.   That was an action brought by a wife for a limited
divorce under the statute.   She was defeated in the action, notwith-
standing which the justice at special term awarded her the custody
of her children.   That part of the decree was reversed in the court
of appeals, it being held that the supreme court had no jurisdiction
to determine the matter of the custody of the children in that action.
Thus the question concerning the mother's control of the children
was directly involved, and the court, after referring to the sections
of the Revised Statutes upon which this proceeding is based, said:

"The remedy by habeas corpus is open to the plaintiff, and she may by a
direct proceeding have the right to the custody of the children determined as
between herself and her husband; but the existence of this remedy does not
tend to show that the custody may be adjudged to her in the action for separa-
tion after having failed in the very foundation of her action."

That was a case in which such facts were not shown as would en-
title the plaintiff to a decree, notwithstanding which the court held
that the writ of habeas corpus was open to her, and that, in a direct
proceeding, she might have her remedy, even in the face of a sol-
emn and final adjudication that she was not entitled to a decree of
limited divorce.   We are therefore of the opinion that it is not
necessary that this petitioner must go to the extent of showing her-
self entitled to a divorce a mensa et thoro before she may receive
the benefit of the discretionary power of the court under the terms
of the statute, but at the same time that power should not be exer-
cised in favor of the wife unless she shows something real and sub-
stantial to justify her conduct in leaving her husband.   This view
is directly associated with the fitness of the mother to have the con-
trol and charge of the infant children.   As was said in Mercein v.
People, 25 Wend. 74, in settling the question of custody, the causes
which have led to the separation affect personal character, "and
touch the qualifications of the parties for the proper exercise of the
parental office."   If the mother has wantonly, and without excuse or
reasonable cause, deserted her husband, and broken up his home,
it would be a grievous injustice to reward her for the violation of
her duty by giving her the possession and control of the children.
While the prime consideration is the benefit of the children, no court
could consider that their welfare would be conserved by intrusting

them to a woman who had so little either of good feeling or judgment or conscience as that. We think that the remedy sought in proceedings of this character may be furnished to a wife under the statute when it appears to the court that she is living separate and apart from her husband for some good and substantial reason which justifies her morally in the course she has pursued, although that reason may not be sufficient as a basis for a decree of divorce, always provided the wife is a fit and proper person, having the means and ability properly to support and educate the children, and that the court is satisfied it will be for the best interest and welfare of such children that they shall remain temporarily with their mother.

These general considerations having been stated, they must be applied to the facts of this case as they are developed upon the record before us. The relator's petition was filed in December, 1895. It sets forth her marriage with Louis Sternberger; that they were living, at the time the writ was filed, in a state of separation without being divorced, and that the relator was an inhabitant of the state; that there were two children of the marriage above referred to, and the ages of the children; that the son was prematurely born, was in delicate health, was slow in development, and required the mother's care; that she was qualified, both as to personal fitness and pecuniary ability, to support the children; that her husband was without means to enable him to provide for them; that he was an unfit person to have their care and custody; that he was of violent and uncontrollable temper, and in his conduct towards her for some period of time had been coarse, brutal, insulting, profane, and grossly obscene, and had furnished just and reasonable cause for her withdrawing from all association with him, which she did early in November, 1895. The return to the writ contains a denial of all the material allegations of the petition, and sets forth that the relator is an unfit person to have the charge of the children. To that return a traverse was filed, reasserting the matters alleged in the petition, and denying the relator's unfitness. When the matter came on to be heard, the court made an order directing a reference to take proof upon two questions, namely: First. Is the mother a proper person to have the care and custody of the children? Second. Is the father a proper person to have the care and custody of the children? And the referee was also directed to report the evidence taken by him on those questions, together with his opinion as to what disposition of the care and custody of the two children would best conserve their interests. After a protracted hearing, the referee made his report, in which he found that the mother was a proper person to have the care and custody of the children; that the father was an improper person to have such care and custody; and he was of the opinion that it was to the best interest and welfare of such children that they should be left in the custody of their mother. Upon the coming in of that report, an application was made to the court to confirm the findings of the referee, which motion was denied, and an order was made committing the custody of the children to the respondent, and from that order this appeal is taken.

We agree with the finding of the referee that the mother is a fit
and proper person to have the care and custody of the children.   It
is shown that she is a woman of education, refinement, strong ma-
ternal feeling, deeply interested in the welfare of her children,
competent in every way to take care of and provide for them, and
to surround them with such influences as will tend to promote their
physical health and their moral and mental welfare.   But we do
not agree in a complete condemnation of the respondent as a person
altogether unfit, under any circumstances, to have the custody and
control of these children, and that is the impression one might get
from the referee's estimate of their father.   The case must be ex-
amined with reference to the situation of the parties, and the needs
and best interests of the children, under the unfortunate circum-
stances appearing by the record, and as they existed when the pe-
tition was filed.   The evidence fails to satisfy us that the respond-
ent Louis Sternberger is without character, or totally deficient in
paternal affection, or altogether regardless of the true interest and
well-being of his children.   There is no reason why he should be
pilloried or stigmatized, greatly at fault as he has been in his con-
duct towards his wife, even to the extent of forfeiting his right to
the continuous custody of his children.   We concur in the referee's
conclusion that that custody should be temporarily taken from the
father and confided to the mother.   We are to dispose of this
matter upon considerations affecting the welfare of the children,
and, to do that, must have regard to the relative real, and not fan-
cied, advantages to be secured to them by providing for their cus-
tody and maintenance.   We consider it to be satisfactorily estab-
lished that it is much better for them to remain at the present time
with their mother than with their father, and that consideration
arises from the proven fitness of the mother to take charge and
control of them, their tender years, the delicate condition of the
boy, the necessity that exists for the girl having maternal care and
guidance, the fact that the mother has not deprived herself, by
any act or conduct of hers, of the right to discharge her duty to the
children, and that, notwithstanding the general good character
of the father, he has so conducted himself in his relations with his
wife that he has given her reasonable moral ground for leaving him
and taking her children with her.

It would be neither instructive nor advantageous in any way to
refer with minuteness to the testimony upon which we reach this
determination,—a course which might gratify the pruriency of the
curious, but would be of no benefit to the parties interested.   It is
necessary, however, that we advert in a very general way to some
of the facts which induce the conclusion at which we have arrived.
From the date of the marriage of these parties in April, 1888, until
the autumn of 1890, they lived with and formed part of the family
and household of the relator's father.   Both of their children were
born under the father's roof.   The strongest affection and love ex-
isted between the relator and her father, and the evidence discloses
that the respondent Louis Sternberger entertained for his father
the same sentiment of devoted filial attachment.   The relator and

her husband appear to have lived harmoniously together until some time in the year 1889 or 1890, when unkind feelings arose in consequence of circumstances not necessary to mention. The principal and most efficient cause of the ultimate estrangement of the wife from her husband was undoubtedly the financial differences between the respondent and the relator's father,—differences which may have arisen originally from honest misunderstanding, but which resulted in intense bitterness of feeling and profound enmity between the father-in-law and the son-in-law. Out of that enmity grew a series of acts, insulting, irritating, unjust, and harsh beyond endurance, on the part of the respondent to his wife, who was made to bear the brunt of his intense hostility to her father, manifested by passionate outbreaks of ill temper; by disparaging and contemptuous and malevolent remarks concerning her father and her mother, carried as far as an expression of deep regret that he had not the courage to kill that father; by scenes of violence and misconduct such as a self-respecting and sensitive woman could only regard with disgust and aversion. These exhibitions on the part of the respondent were entirely at variance with his ordinary and normal character and deportment as testified to by many witnesses. They evidently were the outgrowth of his financial troubles and misfortunes, acting upon a highly sensitive and excitable temperament, —misfortunes which he attributed largely to his wife's father, and with which, in his unreasonableness, he associated her, upon the assumption that her sympathies were enlisted upon the side of her father, and in hostility to her husband and his interest. That this was the origin of his active ill treatment of his wife, we think, the testimony shows. That ill treatment did not go to the extent of actual brutality or physical injury, but it was displayed in instances of a demonstration of violence to his wife, of furious temper, of disregard of her feelings, and even of her health; for it is shown that, when she was seriously and dangerously ill, a distressing scene of contention between her husband and father was forced upon her by her husband while she lay helpless in bed, and that, knowing the delicacy and fastidiousness of his wife, he offended her modesty and self-respect by using language and making remarks she was not able to utter in speech before the referee, but for very shame was obliged to reduce to writing. The respondent denies with vehemence all these accusations, and especially the obscenities imputed to him, but the referee, having the advantage of seeing the parties when before him, has believed the wife; and upon the subject of obscene remarks her statement finds corroboration in inherent probabilities. It is not conceivable that a delicately reared, refined, educated, and pure woman could ever have imagined the substance, much less have formulated the expressions, which she swore, and the referee believed, the respondent used in the matters referred to. That all this dissension and unhappiness constitutes a real grievance of the wife against her husband cannot be reasonably doubted. Her character and mental constitution are such that his conduct caused her abhorrence, and we cannot disregard, in a case of this kind, the mental and moral qualities of

a woman, so long as her action has not been prompted by mere ca-
price, or wantonness, or morbid self-love, or vanity, or that spurious
claim to superiority which some silly women assume to have over
their husbands.    There are degrees, and very marked ones, of ill
treatment.    Indecencies and foulness of speech may constitute very
gross ill treatment.    What would be a pleasantry to a Billingsgate
fishwoman would be a mortal insult, carrying with it a sense of
the deepest degradation, to a refined and cultivated lady, as this re-
lator appears to be; and she received such treatment.    All the
acts thus generally indicated, but not specifically dilated upon,
reached their climax in the bath-room episode in November, 1895,
and determined the relator to leave her husband.    Under all these
circumstances we feel justified in saying that she had some reason-
able cause for withdrawing from her husband and taking her chil-
dren with her.    Forbearance and submission had ceased to be pos-
sible.'    The conviction that this is so forces itself upon the mind of
the unbiased, attentive, and critical reader of this massive rec-
ord; but, running through it all, there is the suggestion that, under
different auspices and with different surroundings in the earlier
days of their marriage, and with prosperity instead of that adversity
which affected the husband as a deteriorating influence upon his
character, other and different relations would have existed between
these parties, notwithstanding the referee's view that the mar-
riage was an ill-advised one.    The separation seems to us to be due
to the husband's want of proper regard for the feelings, attach-
ments, and nature of the wife, inspired largely by his misfortunes,
and his fancy of her disregard of him and his interests in his con-
test or differences with her father.

On the whole case, we think the interests of the children would
be best conserved by permitting them to remain for the present
with their mother.    Only one really serious thing has been brought
forward as impeaching her fitness, and it relates to occurrences
antedating by some months the birth of the son; but they seem to
be explained, and no further allusion to them is required.    We have
omitted to refer, for reasons already indicated, to any of the tes-
timony connected with the relator's interviews with either of her
counsel, and many of the various matters detailed in the evidence,
and upon which counsel have dwelt minutely in their briefs.    They
have not failed, however, to receive very careful consideration.

The order appealed from must be reversed, and the motion for a
final order confirming the report of the referee granted, awarding
the custody of the children, until the further order of the court,
to the relator, upon the conditions recommended by the referee in
his report, and with costs and disbursements of the proceeding to
be taxed.    All concur.