The People
v.

THE PEOPLE *ex rel.* I. Nickerson, *vs.*———.

The *father* is the natural guardian of his *infant children,* and in the absence of *ill usage, grossly immoral principles, or habits,* or *want of ability* to provide for his children, is entitled to their custody, care and education ; and cannot *at common law* be controlled by the courts in the exercise of his paternal rights, except as above, or for an abuse of the trust confided to him by law.

By statute, this court on the application of the *mother,* where a husband and wife live in a state of separation without being divorced, *may* award the charge and custody of such children to the *mother.*

*It seems,* however, that this power will be exercised only in cases of a separation of husband and wife by *judicial decree* or by *mutual consent;* and not where the wife of her own accord without justifiable cause withdraws herself from the protection of her husband.

*It also seems,* that a separation *without consent* will not be approved except where a divorce *a vinculo matrimonii,* or *a mensa et thoro* would be decreed by a court of chancery.

Sept. 1837.

HABEAS corpus in the case of a *minor child,* on the question of its custody, as between the parents. The mother in this case had withdrawn herself from the protection of her husband and went to reside in the house of her father, and took with her an infant child ; to obtain the custody of which the father sued out a *habeas corpus.* On the return of the writ numerous affidavits were produced on both sides, and after hearing counsel, the following opinion was delivered :

*By the Court,* NELSON, Ch. J. The father is the natural guardian of his infant children, and in the absence of good and sufficient reasons shown to the court, such as ill usage, grossly immoral principles or habits, want of ability, &c. is entitled to their custody, care and education. All the authorities concur on this point. 1 Strange, 579. 2 Ld. Raym. 1334. 3 Burr. 1436. 5 East, 221. 9 J. B. Moore, 278. 10 Vesey, 51. 12 id. 492. 2 Russell, 1. Jacob, 245, and notes to the case. 4 Cond. Ch. 115. 2 Simon, 35. 2 Cond. Ch. 299. 8 Johns. R. 328. 2 Kent's Comm. 220 and 194. 1 Dow. N. S. 152. 2 Fonbl. 232, (*n.*) 2 Bro. C. C. 101. *Blesset's case,* Lofft. 74, 8. *Ex parte McClellan,* 1 Dow. P. C. 81. 2 Cox, 242.

ALBANY,
Sept. 1837.

The People
v.

Many of the cases are very strong and decisive in vindication of this paternal authority. In *The King* v. *De Manneville*, 5 East, 221, the child was only eight months old, and had been forcibly taken from the mother, and there was some ground of apprehension that the father intended to carry it out of the kingdom. But the court refused to interfere. Lord Ellenborough observed, that the father was the person entitled by law to the custody of his child : that if he abused the right to the detriment of the child, the court would protect it. Having the legal right, and not having abused it in that case, he was entitled to have it restored to him. The case of Mr. *Lytton* and *Sir W. Murray*, referred to by Lawrence, J. in the same case, were equally decisive upon the point. In the case of De Manneville, the mother had separated from her husband on an allegation of ill usage, and taken the child with her. This same case afterwards came before Lord Eldon, 10 Vesey, 51, who also refused the mother the custody of the child, as she had withdrawn herself from the ·protection of her husband ; but restrained him from removing the child out of the kingdom. In. the case *Ex parte Skinner*, J. B. Moore, 278, the infant was six years old, and the court refused to take it from the custody of the father and deliver it over to the mother, and placed the refusal upon the authorities above cited. In *Ball* v. *Ball*, 2 Simon, 35, it was decided by the vice chancellor, that the court had no jurisdiction to deprive the father of his common law right to the care and custody of his infant children, even though he was living in a state of adultery, unless he brings the child in contact with the woman. All the cases on the subject, he said, proceeded upon that distinction, and which appears to have been conceded by the counsel for the mother. In the great case of *Wellesley* v. *The Duke of Beaufort*, 2 Russell, 9, Lord Eldon, in vindicating the power of the court of chancery to control the authority. of the father over his infant children, concedes that " the law makes the father the guardian of his children by nature and by nurture ;" and places the right of the court to interfere upon the abuse of the trust, or special interest of the child. The same ground is stated in *Lyons* v.

*Blenkin,* Jacob, 245, 4 Cond. Ch. R. 120. So fully does the law recognize the authority of the father on this subject, that he is permitted to perpetuate it beyond his own life ; for he may by deed, or will duly executed, " dispose of the custody and tuition of such (his) child, during his minority or for any less time to any person or persons in possession or remainder." 2 R. S. 150, § 1. And by the following section, such a disposition is declared " valid and effectual against every person claiming the custody or tuition of such minor as guardian in socage, or otherwise."

In one specified case, the revised statutes have enlarged the power of this court over the subject beyond that which it appears from the authorities above referred to existed at common law ; and provide, that on the application of the mother, being an inhabitant of this state, in case the husband and wife live in a state of separation without being divorced, " the court on due consideration may award the charge and custody of the child so brought before it (on *habeas corpus*) to the mother, for such time, under such regulations and restrictions, and with such provisions and directions as the case may require." 2 R. S. 148, 9, § 1, 2. It may also annul or modify the order at any time after it is made. § 3. It may be well doubted, I think, whether this statute was intended to apply where the wife withdraws from the protection of the husband and lives separate from him without any reasonable excuse ; because then the separation would be unauthorized, and in violation of the law of the land. It was probably designed to remove the difficulty that existed at common law in denying or restraining the authority of the father in the case of an authorized separation, such as for ill usage, or by consent, where no ground existed for impeaching that authority upon common law principles. The legislature could not have intended that the court should ever award to the mother the care and education of her minor children, when she had wilfully and without pretence of excuse, abandoned her family and the protection of her husband, if he was in a situation to take care of them, and no well founded objection existed in the case.

The interference of the court with the relation of father and child, by withdrawing the latter from the natural affection, kindness and obligations of the former, is a delicate and strong measure ; and the power should never be exerted except for the most sound and solid reasons.   In this country, the hopes of the child in respect to its education and future advancement, is mainly dependent upon the father ; for this he struggles and toils through life ; the desire of its accomplishment operating as one of the most powerful incentives to industry and thrift.   The violent abruption of this relation would not only tend to wither these motives to action, but necessarily in time, alienate the father's natural affections ; and if property should be accumulated, the child under such circumstances could hardly expect to inherit it.

In view of the foregoing rights of the father, and duty of the court, I have diligently and carefully examined the facts disclosed in the affidavits, and feel myself bound to say that upon the whole, nothing appears that can justify the conclusion that the father is not a fit and proper person to have the care and education of his child, or that it would be for the interest of the child pecuniarily or otherwise, to commit its custody to the mother, according to the principles of the common law, and the numerous adjudged cases already referred to.   I must also say, that unless the case can be materially varied, Mrs. Nickerson has greatly mistaken the obligations and duties which devolved upon her by the marriage vow ; and that she is now living in a state unauthorized by the law of the land.   The statute, 2 R. S. 145, 6, 7, art. 3, 4, enumerates the cases in which a separation may be legalized, either by a dissolution of the marriage contract or by a divorce from bed and board.   The course of the decisions of the court of chancery clearly show that no divorce or separation could be decreed upon the facts before me.

It is, no doubt, possible that the home of the wife may be made intolerable without any actual violence committed upon her person ; harsh and cruel usage that would justify a separation, may be practised towards her short of this by an unkind husband, and this is what seems intended to be *intimated*

ALBANY,
Sept. 1837.

The People
v.

ALBANY,
Sept. 1837.

The People
v.

in the affidavits opposing this motion. Upon questions, however, involving such solemn considerations, and so deeply affecting the future condition and character of the parties we cannot act upon *insinuations*. We regard only the facts. The character of the relator in this case, is very strongly supported by his neighbors and acquaintances who have known him from infancy. They declared upon oath that he is a young man of sober, moral and industrious habits, and express the belief that he has ever conducted towards his wife with kindness and affection. Many of them have been on intimate terms with the family, and in a situation to have known or heard of harsh or unkind treatment of the wife if such had existed. They not only discredit such allegations, but are led to the belief that she was well provided for, contented and happy, and appear surprised at allegations to the contrary. The relator himself has denied in the most express terms all unkind conduct, and any desire or intention to injure the person, or wound the feelings of his wife, and expresses a strong and becoming anxiety that she would return to his protection and home. Under all this weight of evidence, it is difficult for us to conclude that he has meanly and secretly outraged her affections, or sought the privacy of the conjugal relations to torture her feelings and thus render her life wretched and insupportable with him, at the same time concealing from his neighbors and even intimate friends any apparent unkindness or want of affection.

An order was accordingly entered that the child be delivered to the father, and that the care and custody of her be committed to him.