(91 App. Div. 322.)

PEOPLE ex rel. SINCLAIR v. SINCLAIR.

(Supreme Court, Appellate Division, First Department. February 11, 1904.)

1. DIVORCE OR SEPARATION—CUSTODY OF CHILD—DISCRETION OF COURT.

Under the statute permitting courts to decree the custody of a child to either father or mother, the court will regard the best interests of the child; and, where the parents separate because neither will reside in the home of the other, but without serious fault in either, and both are amply able to care for their boy, four years of age, the court will grant the custody to the mother, with unrestricted right of visitation to the father.

Van Brunt and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Application for habeas corpus by the people, on the relation of Ella Sinclair, against Daniel A. Sinclair. From an order awarding the custody of the infant child of the parties to the relator, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Eugene Howell Daly, for appellant.
George W. McAdam, for respondent.

HATCH, J. The parties to this proceeding were married on or about the 2d day of June, 1896, and lived together as husband and wife until the 2d day of July, 1903. The child, the custody of which is the subject of this controversy, is a boy, born March 30, 1900. Consequently he will be four years of age in the month of March next ensuing. It is undisputed that the wife is possessed of considerable property, and has an independent income of $3,000 a year. About four years ago, by an arrangement between the husband and the wife, she purchased the house No. 809 Lexington avenue, in the borough of Manhattan, and paid for and furnished the same exclusively with her

own money. In the house the wife caused to be fitted up an office for her husband, who is a practicing physician. The parties resided at this place continuously, living together as husband and wife, until July 2, 1903, at which time the husband left the premises in Lexington avenue, taking the child with him, and went to No. 226 East Sixty-Second street, where his mother and sister resided, and he has continuously resided there since. Upon taking up his residence at this place, he requested his wife to come and live with him at that place, which she declined to do. Subsequently she went to the place of residence of the husband, possessed herself of the child, and took it with her to a summer residence at Pine Hill, Ulster county, N. Y., where she was spending the summer. On the 7th of August, 1903, the husband again took the child from the possession of the wife, and returned with him to his residence, in the city of New York. Thereafter, and on the 14th day of August of the same year, plaintiff sued out this writ, requiring the husband to produce the child before the court. The proof submitted upon the part of the wife tended to establish that she had at all times while living in Lexington avenue paid all of the household expenses of the family, without aid or assistance from her husband; that she had had almost the sole care and nurture of the child, and had discharged her duties as mother of it with fidelity, and for its best interests. It is evident from the proof submitted that the relator is abundantly able to care for and support the child, and attend to its proper nurture and training; and nothing appears to cast any discredit upon her fitness or disposition to discharge fully and completely the duties of a mother towards the child, or that at the residence in Lexington avenue the child will not be in all respects well provided for in every matter relating to its future welfare. The husband has received an income from his profession during these years of about $2,500 a year, and during the last year it amounted to $2,900. He claims to have given to his wife from $75 to $100 every month; has paid his own personal expenses, and bought some clothing for the child. In the main, however, it is quite probable that in the Lexington avenue residence the wife bore the larger share of the burden of supporting the household. The house occupied by the husband on Sixty-Second street is a boarding house, wherein his mother and sister and himself have comfortable quarters, and nothing appears to show that it is not a suitable place of residence for the husband and his family.

The difficulties which have arisen between these parties, it is quite clear, are not due so much to any lack of affection and regard for each other as to the relations which they bear to other persons connected with the respective families, and the more or less officious interference by others, who should have sense sufficient to know that their intermeddling may result in the entire breaking up of a home. The wife has as a member of her household an elderly aunt, who has stood in the relation of a parent to her since early infancy, her own parents having died; and between the aunt and the relator there is a loving affection and regard, which such relation has produced. In the household of the husband live his mother and sister, to whom he is devotedly attached, and upon whom he bestows the affectionate love and regard

of a son and brother; and, it is quite likely, as is proper for him to do, he devotes some part of his income for their support and maintenance. Between the wife and her aunt, on one side, and the mother and sister, upon the other, there is an estrangement and an antipathy. It is evident that the relatives of the husband are obnoxious to the wife, and her aunt and other relatives are obnoxious to the husband and his mother and sister. In this condition, certain cousins of the wife have interfered, only to breed still further trouble between the husband and wife. Under such circumstances, it is quite evident that the wife cannot live in comfort with her husband in the same house with his mother and sister, while the husband has undoubtedly been subjected to many discomforts at the hands of the wife's cousins, and perhaps of the aunt, in the house of the wife. Therefore it is that these differences have grown up, and we can well understand the perplexing difficulty which the learned judge below found in making disposition of the custody of this infant. There can be no doubt but that, under the statute, the court has the authority to award the custody of the child to the wife or to the father. People ex rel. Sternberger v. Sternberger, 12 App. Div. 398, 42 N. Y. Supp. 423. It is the undoubted rule that the husband is regarded, in the law, as the head of the household; and the law awards to him the care and the custody of the children, and charges upon him the duty of their proper care and maintenance, as well as the support of his wife. And unless some reason appears, the court is not justified in interfering with the law in this regard, but is bound to confirm such right in the husband in the event that the welfare of the child will not be prejudiced thereby. In all cases, however, where the custody of tender infants is involved, the prime consideration is the welfare of the child. The right of the husband must always yield to such considerations. Nature has devolved upon the mother the nurture and care of infants during their tender years, and in that period such care, for all practical purposes, in the absence of exceptional circumstances, is almost exclusively committed to her. At such periods of life, courts do not hesitate to award the care and custody of young infants to the wife, as against the paramount right of the husband, where the wife has shown herself to be a proper person, and is able to fully discharge her duty towards the child. We do not find it necessary to rehearse in detail all that the record shows respecting the unhappy differences which have arisen between these parties, nor to determine with whom lies the greater fault in producing their separation. We have little doubt in concluding that all of their differences might be adjusted, if such adjustment involved a consideration of themselves alone. For the present, they are living in a state of separation, and the custody of the child should be awarded where it will be best cared for. In view of its tender years, and that the mother is a proper person and has the disposition to look after its welfare in every respect, and is abundantly able pecuniarily to discharge such duty in the fullest extent, we have concluded that the court below was correct in reaching the conclusion that for the present the custody of the child should be awarded to the mother. The order provides that the father of the infant child shall have free access to visit and see it at any and all

times, and that he shall be notified of any change made in the abode of the infant. The right of visitation by the father is thus freely and fully preserved, and gives to him opportunity to see that the welfare of the child is protected, and that it does not become estranged from him in affection, and he can exercise upon it his fatherly care. Changed conditions and the lapse of time will vest in him the right to apply to the court to interpose in his behalf in asserting his rights.

These views lead us to the conclusion that the order should be affirmed, but without costs to either party

INGRAHAM and McLAUGHLIN, JJ., concur. VAN BRUNT, P. J., dissents.

LAUGHLIN, J. (dissenting). The facts are sufficiently stated in the prevailing opinion. The authority conferred upon the courts by section 40 of the domestic relations law (chapter 272, p. 222, Laws 1896) with reference to the custody of minor children where the parents are living apart, even without a judicial decree or a separation agreement, must be construed and applied with due regard to the natural and constitutional rights of the parties. The husband has done nothing to forfeit his right to say where his family shall reside, and the relator has no good and sufficient reason to justify her refusal to live with her husband and son. Nor is it claimed or shown that the father is not kind and affectionate toward his child, or is not able to properly clothe and support him, or is not a fit person to control his bringing up. The husband, in refusing to live in his wife's house, and in selecting another abode, but exercised his legal rights. The relator was welcome to the new home, and was treated by respondent with due consideration, but she would not come or remain. Ordinarily, of course, a child of such tender age should not be deprived of the mother's affectionate care and attention, but the place for the mother is with her husband and child. When she persists in living apart from her husband merely because she does not like or cannot get on peaceably with his relatives, and prefers to live, by the expenditure of her own fortune, in greater luxury than the husband is able to provide, the court, should not, by awarding the custody of the child to her, approve her course and conduct, and thus, perhaps unwittingly, bring about the permanent separation of the husband and wife. Nothing has occurred between these parties to render it impossible or even very difficult for them to reside together; and it is reasonable to presume that the mother has sufficient regard and affection for her child, if not for her husband, to return to the child and husband, if the court holds that, under existing circumstances, this is her duty, and that she may not, upon those facts, remove the child from the home the husband has provided for his family.