### ULLMAN v. ULLMAN (two cases).

(Supreme Court, Appellate Division, Second Department.   June 7, 1912.)

**1. DIVORCE (§ 298*)—JUDICIAL SEPARATION—CUSTODY OF CHILDREN.**

At common law the father had the superior right to the custody of the children, and such preference should prevail under the Domestic Relations Law (Consol. Laws 1909, c. 14) in case of a judicial separation of the parties and the mother's abandonment of the family, unless the mother is able to establish that the welfare of the child will be better conserved by delivering it into her custody.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 781–787; Dec. Dig. § 298.*]

**2. DIVORCE (§ 303*)—LEGAL SEPARATION—CUSTODY OF CHILDREN—MOTION.**

Code Civ. Proc. § 1771, provides that, in actions for divorce or separation, judgment shall be entered which shall provide for the disposition of the issue of the marriage, and that thereafter the court, on application, may annul, modify, or amend it. *Held* that, where the trial justice in a suit for separation had filed a memorandum of his decision wherein he stated that the custody of a child should be awarded to plaintiff, a motion by defendant to obtain custody of the child filed before judgment was premature.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 793–795; Dec. Dig. § 303.*]

Appeal from Special Term, Richmond County.

Action by Percival G. Ullman, Jr., against Edna N. Ullman.  From a Special Term judgment and order in favor of plaintiff, defendant appeals.  Affirmed.

See, also, 146 App. Div. 918, 921, 131 N. Y. Supp. 1147, 1148.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

J. S. L'Amoreaux, of New York City (Adolph Kiendl, of New York City, on the brief), for appellant.

Howard R. Bayne, of New York City, for respondent.

THOMAS, J.   The judgment entered in July, 1911, separates the parties for abandonment by the wife, and awards the custody of a son, then 2½ years of age, to the husband, and there is appeal therefrom.   After decision and before judgment, the defendant made a motion on the evidence taken, and affidavits, for the custody of the child, and was met by counter affidavits, and from the order denying the motion appealed.   While the evidence in the action justified the findings of unwarranted abandonment by the wife, it does not show convincingly that in intelligence or morals either party is deficient or superior.   It does establish that neither has substantial means, although it appears that the plaintiff has moderate earning power as a real estate operator.   But for the care of the child the plaintiff is largely dependent for nurture and a home upon his mother and father, who live on Staten Island in a comfortable house with respectable surroundings.   The mother can give directly to her child a mother's care, but is dependent for support upon her own father and mother, quite willing to give it, while the father, in matter of residence and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

means, is capable to the extent indicated. It is not useful to consider the exaltation of either party by themselves and their witnesses, nor the mutual criticisms and depreciations. In matter of estate and social standing the grandparents are on practical equality, and scant regard should be paid to the paternal grandfather's status as a lawyer or to the maternal grandfather's vocation of an operator in oyster production. Both families are doubtless sane in mind, morals, and sufficient in estate. But the judgment determines that the mother put an end to the family life. In such case, the court must decide to whom the rearing of the child should be committed. Code Civ. Proc. § 1771.

[1] At common law the father has the superior right (People ex rel. Nickerson v. ———, 19 Wend. 16; Mercein v. People, 25 Wend. 64, 35 Am. Dec. 653; People ex rel. Sinclair v. Sinclair, 91 App. Div. 322, 86 N. Y. Supp. 539; People ex rel. Pruyne v. Walts, 122 N. Y. 238, 242, 25 N. E. 266), and, even if the rule has been modified by the Domestic Relations Law (Consol. Laws 1909, c. 14), a question we do not consider, the preference should prevail in case of the mother's abandonment of the family (People ex rel. Nickerson v. ———, .19 Wend, 16, 18, 19; People ex rel. Sinclair v. Sinclair, supra; People ex rel. Sternberger v. Sternberger, 12 App. Div. 398, 403, 42 N. Y. Supp. 423). But even in such case the welfare of the child is the primary consideration, and it is open to the mother to convince the court that she should have the custody, and in that case the court has the power to award it to her. Mercein v. People, supra; People ex rel. Pruyne v. Walts, supra; Waring v. Waring, 100 N. Y. 570, 572, 3 N. E. 289; People ex rel. Sinclair v. Sinclair, supra; Osterhoudt v. Osterhoudt, 28 Misc. Rep. 285, 59 N. Y. Supp. 797; Matter of Pray, 60 How. Prac. 194; Domestic Relations Law, § 70. But it would be a strange inconsistency should the court, after deciding that the mother had gone unjustifiably from her husband's house, visit upon him the penalty of the home broken by her fault and of losing his child, and reference may be made to the thought expressed in Davis v. Davis, 75 N. Y. 221, 227:

"It would be an anomaly in legal proceedings to allow a complainant, who had failed to establish a claim to the principal relief sought, to have a decree against the defendant for the mere incidents to that relief."

In People ex rel. Olmstead v. Olmstead, 27 Barb. 9, the court recognized the paramount right of the father to the custody of the child, but considered that this superior right was subject to the control of a court of equity in two cases:

"(1) When the father has abused or forfeited the right by cruelty or misconduct towards the child, or his character is such, or he has been guilty of such conduct, that the welfare, either physical or moral, of the child requires that such child shall be removed from the father. (2) When the father and mother are living separate from each other, under such circumstances as would warrant the court in granting a divorce a mensa et thoro, and the welfare of the child requires that it should reside with the mother."

In the opinion it is said:

"It has never been dreamed that, when the mother has been at fault in the occurrences preceding the separation, she should be rewarded for her faults by the interposition of the court. If she breaks up the household,

and departs from her husband's house wrongfully, whether it be done of her own purpose, or from weakly yielding to the evil influences of others, she is not to be allowed to take with her the children of the union. By so doing she would violate the clear rights of the husband, and would inflict a wrong on the children by depriving them of the care of that protector to whom the law has wisely committed them as their best friend; and, above all, she would be turning those parental affections, which were designed to be a bond of union to the family, into the means and reward of its disruption—into the punishment of the innocent, and the solace of the guilty."

In People ex rel. Rhoades v. Humphreys, 24 Barb. 521, 523, it is stated that:

"The general doctrine that the right of a father to the custody of his minor children is paramount to that of the mother is well settled. He may forfeit it by misconduct, or lose it by disqualification, and it may be suspended by reason of the tender age of the child, and its welfare requiring that it be with the mother. A strong case must exist, to warrant the depriving him of this right, even for a limited period. These views will be found fully supported in People v. Mercein, 3 Hill, 399 [38 Am. Dec. 644], and the cases there cited."

In People ex rel. Brooks v. Brooks, 35 Barb. 85, Justice Allen wrote what is useful in generalization of the subject:

"While by the Roman law and the civil code of France, as well as by the common law, the father is the recognized lawful guardian of his children and entitled to the custody of their persons, the courts, as the representatives of their sovereign—the parens patriæ—may in their sound discretion, and when the morals or safety of the interests of the children require it, withdraw the infants from the custody of their father, and give them to the mother, or place the care and custody of them elsewhere. This jurisdiction to remove infant children from the custody of their parents, and to superintend their education and maintenance, although one of extreme delicacy and responsibility, is nevertheless well established and indispensable to good order and the just protection of society. It has been repeatedly exercised in this state, and has been acted upon for 150 years in England, and was recently confirmed by the House of Lords in Wellesley v. Wellesley, 2 Bligh, N. S. 124; s. c., 2 Russ. Rep. 20, 21. The jurisdiction proceeds upon the theory that the right of guardianship is a trust for the benefit of the child, and the parent is not at liberty to abuse it. It is not important here to inquire in what cases and for what reasons the courts will interfere with the parental control of infants. It is sufficient to say that the welfare of the child alone is considered by the court in the exercise of this jurisdiction. It acts only for the benefit of the infant, without regard to the feelings of the parents. * * * The common-law rules affecting the relative rights and duties of husband and wife and parent and child have respect to the interests of society and the welfare of the public, and are regarded as the necessary foundation of sound morals and good order, and are in force except as changed by express legislation. And before the wife, in the absence of any fault in the husband, can claim an exclusive right as against him to control the family, or to have the sole care and custody of the children, she must be able to point to a positive rule of law thus preferring her to the husband, and conferring upon her more rights; and the same law should impose upon her corresponding duties and responsibilities, and confer the necessary power to discharge them. * * * A child is not to be regarded as a chattel, or the parents as tenants in common, but the court, in case of contest between the parents, must look into the circumstances, and make such disposal of the child as the interests of the child and of society demand. If the husband is in all respects fit and proper to have the care of the child and to superintend its education, and other things are equal between the two, the recognized paramount right of the father must prevail over the otherwise equal claims of the mother. But if the

mother is, without just cause or provocation, living in open violence of her conjugal duties, and setting at defiance the claims of her husband to her society and assistance, she does not possess equal claims to the children, and shows herself in a measure unfit to be intrusted with their education. At least the courts ought not to encourage immoral and vicious conduct of this character by giving her the children, to the exclusion of the husband, who, it may be, is ready to discharge all his duties as a husband and parent as well as a member of society. The discretion of the court, so far as it has a discretion, should be exercised in favor of the party not in fault. And whether the claim of the mother is under the Revised Statutes or under the law of 1860, if she has any claim while living separate from her husband, under the latter act, the inquiry would be the same. Courts have always been very careful not in any way to encourage the dangerous and unlawful practice of husband and wife living in a state of unauthorized separation. And whenever the wife, without just cause, lives apart from her husband, she is deemed to have forfeited her claim to her children."

I consider that the rule in its entirety is not stated in People v. Olmstead if it be intended to say that only the misconduct or incapacity of the father or a cause of action for divorce in the matter authorizes the court to give the mother custody of the child. The mother may have been in fault and the father blameless, and yet the age or condition of the child may require a mother's care. Both parties give evidence of the undesirability of a divided control. And yet I am not satisfied that there is not some necessity for it, for it is questionable whether it is not for the child's interests that it should have ordinary maternal love and nurture. The child at tender age is entitled to have such care, love, and discipline as only a good and devoted mother can usually give. This should continue from intimate association until the infancy grows into something like boyhood, and, while perhaps the exact limit cannot be stated, yet it will be when the infantile state has been passed. Meanwhile the father must not be excluded from a full opportunity to have such possession of his child as will enable him to impart to it what from the father enters into the child's character, and to indulge the affection that a father feels and bestows, whereby the boy may grow up in knowledge and love of him.

[2] But at this point I am met by the objection that the motion is premature, as it was made before the judgment was entered and without leave. No justification of the practice is furnished. The record shows that the trial justice limited the appellant's opportunity to contest the question of the custody, and a motion seems necessary, and yet the statutory directions must be followed. Although the trial justice had filed a memorandum of his decision, wherein he stated that the custody of the child should be awarded to the plaintiff, yet judgment had not been entered pursuant to section 1771 of the Code of Civil Procedure before a motion for the custody of the child was made by the defendant. The statutory direction is that the judgment shall make provision for the disposition of the issue of the marriage, and that thereafter the court may, upon application, annul, modify or amend it, but the power to make this amendment is conditioned upon the consent of the court previously acquired. This departure from the authorized practice of itself requires an affirmance of the order.

The judgment should be affirmed. All concur.