## Vanover, et al. v. Johnson, et al.

(Decided December 7, 1923.)

### Appeal from Pike Circuit Court.

1. Parent and Child—Welfare of Child Question in Determining Custody.—In a suit between mother and grandparents to obtain custody of a child, the case must be determined solely with a view to the general good and welfare of the child.

2. Parent and Child—Mother Not Barred from Custody of Child by Adulterous Acts, where She has Reformed.—Mother of child, divorced and remarried, should not be denied custody of child as against its parental grandparents, because of adultery committed during the first marriage, where her conduct shows complete reformation.

3. Parent and Child—Girl of Tender Years put in Custody of Mother. —As between grandparents and mother, custody of girl of tender years should be given to the mother.

ROSCOE VANOVER for appellants.

L. J. MAY for appellees.

OPINION OF THE COURT BY JUDGE ROBINSON—Reversing.

In 1913 Virgie Vanover and Brownlow Johnson were married in Pike county, Kentucky, and to this union two children were born, one of which later died, and the survivor, a little girl now six years of age, Laura Bell Johnson, is the subject of contention.

Several years after the birth of this child, owing to marital difficulties, the parents separated, and during this interim it was charged and frankly admitted that Virgie Johnson was guilty of adultery with one Sam Vanover, and upon its discovery by her husband, he applied for and

secured a divorce, which was not contested by the wife. About the time the divorce was granted Johnson took the child to the home of his parents, where it has remained until this time. It appears from the evidence that the mother, Virgie Vanover, left the community and visited for some time in West Virginia, but later returned to the section in which she had lived, and made constant and insistent efforts to see the little girl at the home of her grandparents, which privilege was refused. She also, as the evidence shows, made numerous articles of wearing apparel for the little one and carried them to the home of Cas and Causby Johnson, the appellees, where the clothing was received but later burned by appellees, as shown on page 37 of the transcript. A short time after this, Virgie Johnson was married to one James Vanover, a young man of good standing and splendid reputation in that community. He owned his farm and took his wife there, where they had a comfortable home, surrounded, apparently, by all the advantages generally to be found in that section. About eighteen months ago he and his wife endeavored to recover the child from the paternal grandparents by writ of *habeas corpus,* which, however, was denied, and later instituted this action in the Pike circuit court, equity division, wherein they petitioned said court that they be awarded the care, custody, possession and control of the infant. After a hearing, their petition was dismissed, and from that judgment this appeal is prosecuted.

It would seem that the grandparents, Cas and Causby Johnson, are quite aged and live in a very small, two-room cabin, where they now have six children besides Laura Belle Johnson. They are exceedingly poor and are not the possessors, apparently, of sufficient means to provide proper food and clothing for them. But nowhere in the testimony do we find that they are not people of good moral character, whose intentions are of the best. The testimony further shows that the appellants, James Vanover and his wife, Virgie (the mother of Laura Belle Johnson), are in exceedingly comfortable circumstances and their home is in every particular thoroughly fitted for the maintenance of the child. Several witnesses so testified and to the effect that in their opinion the general welfare of the child would be greatly enhanced by her removal to this home; and throughout the entire testimony we do not find one word derogatory to the character of

Virgie Vanover since her marriage to James Vanover, who asked to be made a party to this suit and is now one of the appellants. It would appear conclusively that he is a man of tender heart and generous character, since he endeavors so earnestly to aid his wife in securing possession of her child, and leads us to the conclusion that he must have every confidence in his wife and a tender and affectionate regard for her happiness. It is shown that in the home of the grandparents the child is scarcely provided with proper food and clothing, however anxious or desirous the old people may appear to furnish everything possible for its good. And again it can not be contended that, if she should be awarded to her mother, they would be utterly bereft and heartbroken, owing to the fact that they have six other children to brighten and make them happy in their declining years. In passing upon this case, it must be done solely with the view to the general good and welfare of the little girl in question, and if Virgie Vanover, the mother, had appeared to be guilty of further acts of indiscretion other than those admitted and complained of several years ago, the problem would present a less difficult aspect. However, as before stated, long before and since her marriage to James Vanover she has led a most exemplary life (every witness testifying in behalf of appellants and appellees so stated), which would be strong and almost conclusive evidence of her entire and complete reformation. However, attorneys for appellees contend that owing to these deeds of indiscretion long since past, regardles of her present blameless life, she should forever be denied possession of her child. It does not appear that the father, who placed the child within the keeping of the grandparents, is a factor in this contention, which is doubtless due to his having married a short time after his divorce, and then promptly murdering his stepfather, and upon conviction, was sent to the penitentiary. If he were a man of proper character and had joined appellees in contending for the possession of the child, it would appear far more meritorious and entitled to deeper consideration.

Under all the circumstances, it would seem the wise, just and merciful act to restore this child to its mother. Can this court agree with the contention of appellees that the portals to the hope of eternal salvation shall be forever closed to one guilty of acts of indiscretion in the past, whose conduct now is above reproach, showing con-

vincing evidence of complete repentance and reformation? Can we find voice to contradict the divine teaching that through repentance forgiveness is assured? Can we crush the hope of future reward to one who, seeing the error of her way, has endeavored to profit thereby, clinging to that hope of forgiveness that springs eternal in the breast of mankind? Legally it would be difficult; morally, impossible. If, as is the case, the home of appellants seems eminently fitted for the reception of this little one and the mother's tender yearning for its presence touching, and her reputation now above reproach, we feel that this appeal cannot well be denied.

Numerous authorities are cited by both appellants and appellees, and in the case of Stapleton v. Poynter, 111 Ky. 264, it is held:

"While the welfare of the child is to be considered in determining who is to have its custody, the legal right of the parent should also have weight; and therefore the widowed mother of a boy nine years old is entitled to his possession, as against his paternal grandparents, with whom he has lived for several years, though they have fortune, character, kindliness and affection for the child, and though he prefers to remain with them; the mother being a person of moral habits without contagious or infectious disease, and of enough industry to reasonably insure the child from want."

This decision goes even further than the case in question, as by the evidence it is shown that the grandparents are not financially in a condition to provide for this child as are the appellants, and the testimony of James Bentley on pages 19 and 20 of the transcript is to the effect that the conditions existing in the home of appellees are bad.

In L. R. A. 41 (N. S.) 577, it is stated,

"On *habeas corpus* it was held that an infant should be awarded to the custody of its mother where it was of tender years and she was a proper person."

In People ex rel. Sinclair v. Sinclair, 91 App. Div. 322, 86 N. Y. Supp. 539, the father was deemed the proper person, the court saying:

"There can be no doubt but that, under section 40 of the domestic relations law (Laws 1896, chapter 272), the court has the authority to award the custody of the child to the mother or to the father."

From the above it is conclusive that so solicitous are the courts in considering the welfare of children of tender years that their custody will be awarded to the more tender ministrations of the mother, even though the claims of the father might be equally strong.

We further find in 41 L. R. A. (N. S.) 577:

"And in Ex Parte Reed, 19 S. C. 604, an action for separation, it was held that the father was not a proper person to have the training of young children, and they were left in the custody of their mother. It was held discretionary with the court to which of the parents the children should be committed.

See the sustaining case, almost analogous in fact, Mason v. Williams, 165 Ky. 331.

Therefore, would it not seem that Laura Belle Johnson, a girl of tender years, should properly be in the custody of the mother?

Attorneys for appellees cite the following cases: Shallcross v. Shallcross, 135 Ky. 418; Bedford v. Hamilton, 153 Ky. 429. Both of these fail signally to strengthen their contention, and in fact are in nowise applicable to this action.

We are, therefore, of the opinion that the general good and future welfare of this child would be greatly enhanced in the home of appellants, and the judgment is reversed.

Judgment reversed and cause remanded for proceedings consistent with this opinion.