In the Matter of SARAH L. WHITTEMORE, Petitioner, against JOSEPH D. WHITTEMORE, JR., Respondent.

Supreme Court, Special Term, New York County, November 16, 1951.

*Maurice J. McCarthy, Jr.,* for petitioner.

*Harold F. Levin* for respondent.

CORCORAN, J.  The children of the parties are in the *de facto* custody of their father, the respondent.  Their mother, the relator, has asked that a writ of habeas corpus be granted awarding custody to her.  The issues were heard by an Official Referee who has submitted a report in which he recommends that custody be awarded to the mother.  The relator moves to confirm the report, and the respondent moves to vacate it.

The parties were married about fifteen years ago, and have two girls aged ten and six.  Through the years, they and their children lived together and for several years preceding their final separation on March 6, 1951, their home was in suburban New Jersey.  Their married life was extremely unhappy.  There was a succession of quarrels which culminated in a physical encounter during an argument over some trifling matter on March 6, 1951.  Both parties received some injuries.  The testimony on what happened was conflicting.  The Referee has

found that the respondent was the aggressor and that the relator's act in leaving the home right after the fight was not intended to be and was not in law an abandonment by her of either the home or the children. This finding, in which the court concurs, eliminates the necessity of considering cases such as *Ullman* v. *Ullman* (151 App. Div. 419) and *People ex rel. Olmstead* v. *Olmstead* (27 Barb. 9) which established the principle, with qualifications, that a wife who departs from her home wrongfully will be denied custody of the children. However, the finding that there was no abandonment of the children by the relator does not dispose of the vexatious question as to which parent is entitled to custody.

Immediately after the relator left on March 6, 1951, the respondent went to the children's school, took the children out and moved them to New York City where he has since resided with them. The relator moved equally fast. Within a few hours after leaving her home in New Jersey she was on a plane to the south where she intended to get a divorce. She established a residence in Florida and brought an action for divorce against the respondent in that State based on his alleged infidelity and cruel and inhuman treatment of her. The respondent has not appeared in that action and, according to the relator, she is now in a position to enter a judgment by default against him in the Florida court.

The relator had considered bringing an action for divorce against the respondent before the occurrence of March 6, 1951. She consulted a lawyer in New Jersey who told her that in their home State cruelty was a ground for divorce, but she brought no action in that State. She went to Florida to get a divorce there, and she claims that she expected by this procedure to obtain custody of the children in the courts of that State and to keep the children there with her permanently as " it would be better that they be not reminded of any of the past; that they have a completely fresh start ". It is clear what the relator means. She intends to get the children as far away from the respondent as she can. The Referee so understood, and said: " You can't very well help that — you can't very well deprive the children of the visitation at least, by the father ". The relator's counsel agreed with the Referee's understanding of what the relator meant, when he added: " She is expressing what she would like ". The relator attempted to detract from the brazenness of her plan after hearing the Referee's reaction by stating that the respondent travelled much of the time anyhow. The record indicates that in his

former position he was away on business very occasionally, and at present is employed full time in New York City and is home every night.

Since her departure the relator has established herself as a permanent resident of Florida. She is employed in Florida and has assurance that her employment will be permanent. She states that Florida is her permanent residence, and that if she is given the custody of the children, she will take them to Florida and live with them there permanently.

The Referee has made the finding, usually determinative in this type of proceeding, that the best interests of the children would be served by having them live with the relator in Florida. In his report he recommends that custody be awarded to the relator, which he clearly indicates means that she be permitted to take them to Florida to live with her there permanently; that provision be made for visitation by the respondent and that the respondent be compelled to contribute to the support of the children while they are living with the relator in Florida.

In the motion to confirm, the relator asks for $300 a month for the support of the children and boldly asks that the respondent pay their traveling expenses so that they may be taken to a State where he will be unable to see them at all, or at best only on rare occasions and at substantial expense. While the court accepts findings of fact made by the Referee, it sharply disagrees with his recommendations and will not follow them.

The rule which makes the children's best interest determinative in a custody controversy is one which tries to salvage for them the best elements of a family life. It is not a toss-up where one parent wins over the other. It recognizes that the children still have two parents. Since they can no longer be with both parents, the one best suited to guide the moral, mental and physical development of the children will be given custody. If the other parent is a fit person and there are no extraordinary circumstances, that parent should have reasonable visitation rights. In *Nash* v. *Nash* (236 App. Div. 89, affd. 261 N. Y. 579) Justice O'MALLEY, in a dissenting opinion, after quotations from *Ahrenfeldt* v. *Ahrenfeldt* (4 Sandf. Ch. 493) and *Ullman* v. *Ullman* (*supra*), said (p. 92): "The underlying principle of these decisions and the rule in general is that nothing should occur which would estrange the child from the affection of either parent and that a defendant in the position of the appellant should have opportunity to exercise upon the child fatherly care." An award of custody to the relator who would take the children to Florida would make rights of visitation illusory.

As previously stated, the respondent could at best only go there occasionally, if at all. Unless there are exceptional reasons, he and, particularly the children, are entitled to regularity of visitation.

There are no exceptional reasons presented why the court should permit the relator to remove the children over one thousand miles from their father. If it were necessary for the children to live in Florida for reasons of health, then the *Nash* case (*supra*) would justify such action. Perhaps, even if the relator had to live in Florida for reasons of her own health, the sense of the opinion in the *Nash* case might be extended to award custody to her. Even if she could show that her home had previously been in Florida, or that her parents lived there an exceptional situation might be presented. Such is not the case, however. It is a case where the mother seems more interested in vengeance upon the father than love of her children.

At one point in the record the Referee said: " I don't need anything regarding the respondent. The respondent is a fit person, also, to have charge. The question between the two of them is what is best for the interest of the children. There has been nothing shown against the defendant that he is not a fit person. He may not have a proper home for them at the present time. But so far as he is personally concerned, there is no evidence that he is an unfit person. There is nothing against his character, nothing against him personally." The observation that the respondent " may " not have a proper home for the children is vague. The Referee may have been correct if by that remark he meant that the home was not the equivalent of one managed by a mother. The record indicates, however, that under the circumstances the respondent is doing a very good job. Considering his fitness to care for the children, the quality of the home he is providing for the children and the affection which he has demonstrated towards them, this court cannot permit the relator's plans to isolate him from the children to succeed. That would be bad for all concerned.

Just as the relator has created this unfortunate situation by moving to Florida, she can correct it by moving back to the metropolitan area. It is here that she and her children lived. It is here that her children now live and attend school. It is here that their father makes his livelihood. At such time as the relator returns, she shall have leave to apply for another writ of habeas corpus, and her application will be considered *de novo* in connection with all facts then pertinent. At present, the motion to confirm the Referee's report is denied, the motion to vacate it is granted and the writ is dismissed.