Harold Baer, J.
This is a special proceeding instituted the petitioner husband to compel the respondent wife to return their infant daughter, Caroline, age six, to this State and to award custody of the child to the petitioner.
The special proceeding was brought on by. order to show cause. The respondent was served personally in New South. *247 Wales, Australia, pursuant to section 235 of the Civil Practice Act. Thereafter, she appeared specially to challenge the court’s jurisdiction. Mr. Justice Owen McGivern, in an opinion dated March 29, 1960 (23 Misc 2d 222, 223-224), which was affirmed unanimously, without opinion, by the Appellate Division (10 A D 2d 919), overruled the special appearance and held that this court had ‘1 jurisdiction over her person in this proceeding ”, and that this court had “ jurisdiction of the subject matter of this proceeding despite the physical absence of the infant from this State ”, since the respondent conceded, for the purpose of the motion to contest jurisdiction, that the infant was domiciled in New York State.
Leave was granted to the respondent to serve an answer and to plead facts as to her domicile, if so advised. An answer was served, which mainly consists of a general denial of the pertinent allegations in the petition and an affirmative defense alleging that the domicile of the infant and respondent was in Australia.
In the light of the Appellate Division’s unanimous affirmance of Mr. Justice McGovern’s order holding that this court has jurisdiction of the subject matter of the proceeding, it must perforce follow that the next logical step for this court is to determine whether the petitioner is entitled to the relief sought in his petition.
On June 7,1960, a week prior to the date set for the hearing, counsel for the respondent, at the court’s suggestion, and with the acquiescence of the petitioner, agreed to telephone the respondent in Australia to suggest that she and the infant voluntarily return to this country, at the petitioner’s expense, in order to personally appear at the hearing. On June 14, 1960, the date set for the hearing, counsel for the respondent reported that he telephoned his client and that she refused to return. Further, he read into the record a cablegram wherein she affirmed her refusal to return voluntarily. Counsel for the respondent thereupon applied to the court for an adjournment in order to make a formal application to take written interrogatories in Australia on the question of domicile. Upon the denial of the application, counsel for the respondent asked for leave to technically “ withdraw ” from the proceedings, in order to protect his special appearance, which leave was granted. However, counsel for the respondent physically remained in the courtroom during the entire proceeding.
I turn now to the facts as adduced at the hearing: The petitioner and the respondent were married in Montreal, Canada, on December 23, 1949. Immediately thereafter they took up *248 residence in the State of New York, as husband and wife, and were domiciled in this State at all times up to the time that the instant proceedings were commenced. During the marriage, the respondent made several trips to her family home in Australia. On September 18, 1959, the respondent, under surreptitious circumstances, left the country and went to Australia, taking the infant with her. She has refused to return, to date, despite the proven offers of the petitioner to bring her home at his expense.
Petitioner, an attorney and partner in a prominent New York law firm, proved that he provided an adequate home for the respondent and the infant, as well as his stepchildren, the children of respondent’s prior marriage. Petitioner has demonstrated to this court that he is a suitable father, unquestionably able and willing to care for the infant and to provide her with the necessary fatherly and parental care to which she is entitled. Further, it was shown to this court that the father has made provision for the infant’s entrance into a suitable private school in close proximity to the petitioner’s apartment in New York City, which apartment was purchased intending that it be shared by the petitioner, respondent, and infant, prior to the respondent’s leaving the State. No attempt was made to introduce any evidence to show that the respondent was unfit as a mother.
The jurisdiction of a State to regulate the custody of infants has its origin in the protection that is due to them from the State (Finlay v. Finlay, 240 N. Y. 429, 431; Woodworth v. Spring, 4 Allen [86 Mass.] 321, 323).
The court, in exercising its jurisdiction “ upon petition does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other or indeed against any one. [It] acts as parens patries to do what is best for the interest of the child. [It puts itself] in the position of a ‘ wise, affectionate and careful parent ’ * * * and make [s] provision for the child accordingly. ’ ’ (Finlay v. Finlay, supra, pp. 433-434.)
This court is not concerned with the private differences between the husband and wife, nor is it determining rights as between parents and child. Instead, as parens patrie, it is assuming jurisdiction and exercising the powers inherent in that jurisdiction, for the sole purpose of protecting the infant (Finlay v. Finlay, supra; Matter of Lang, 9 A D 2d 401, 405; Matter of Bachman v. Mejias, 1 N Y 2d 575, 581).
Normally our courts have taken the position that children of such tender years as this infant are “ entitled to have such *249 care, love and discipline as only a good and devoted mother can usually give ” (Ullman v. Ullman, 151 App. Div. 419, 424-425). Further, that the custody should so remain until the child has passed the infantile stage. However, it has similarly been the policy of our courts that “ the father must not be excluded from a full opportunity to have such possession of his child as will enable him to impart to it what from the father enters into the child’s character, and to indulge the affection that a father feels and bestows [upon his child] ” (Ullman v. Ullman, supra, p. 425). It is interesting to note that at common law the father has the superior right to the child (People ex rel. Nickerson v. ——, 19 Wend. 16; People ex rel. Olmstead v. Randell, 27 Barb. 9).
While custody has been awarded to a mother even where her unjustified abandonment of the family home has created a marital breach (People ex rel. Pritchett v. Pritchett, 1 A D 2d 1009; Ullman v. Ullman, supra), “ the unwillingness of one or both to carry out their marital obligations are factors which may not be disregarded in determining which parent will provide the better home ” (Harrington v. Harrington, 290 N. Y. 126, 130).
Suffice to say, however, that apportionment between the parents of the blame for a broken marriage may not be the decisive factor in determining custody. The only guiding criterion is the child’s welfare (see People ex rel. Herzog v. Morgan, 287 N. Y. 317).
To award custody to the mother in the present state of affairs would, in effect, be to completely deny to the infant the right to the love, parental care, companionship and guidance of her father. Further, it would deprive her of the right to be raised and educated in her own country — which is a part of her birthright. Moreover, although secondary, it would deprive the petitioner of the nataral rights he has as a father — since he would be completely cut off from his daughter by a distance of many thousands of miles (People ex rel. Djurovic, v. Djurovic, 205 Misc. 216, 219-220, affd. 283 App. Div. 1055).
The petitioner has offered to return the respondent and the infant to this State at his own expense. He has expressed a willingness to resume the marital relationship and to attempt to resolve the marital differences — all in the interests of the child. The court is impressed with his sincerity.
In view of the circumstances, it is the finding of this court that the respondent is not acting in the best interest of the infant by keeping her in Australia. Accordingly, the respondent is ordered to return said infant to this State, upon the condi *250 tion that the petitioner pay to the respondent the airplane transportation costs for the infant, if the infant returns alone, and for both the respondent and the infant, if both return, and such other reasonable travel costs as may be incurred.
In the event that the respondent returns to this State, custody is awarded to her, with right of visitation to the petitioner on week ends and such other mutually convenient times as do not interfere with the child’s schooling. The petitioner may also have custody during vacation periods in the school year and one month during the Summer.
If respondent fails to return to this State with the infant within 30 days after the entry of the order herein, then the court awards custody to the petitioner with the right of visitation to the respondent on week ends and such other mutually convenient times as do not interfere with the child’s schooling. The respondent in these circumstances may similarly have custody of the infant during vacation periods in the school year and for one month during* the Summer. Upon return of the child to this State, neither party may remove her from this State without the permission of the court.