■ In the Matter of IRVING A. HARRIS, Appellant, v. MARGARET HARRIS et al., Respondents.— In a habeas corpus proceeding by a husband against his wife and her parents to determine the custody of the infant child of such husband and wife, the petitioner appeals from an order of the Supreme Court, Suffolk County, dated September 21, 1960, made after a nonjury trial, dismissing the writ and awarding custody of the infant to the mother. Order affirmed, without costs. No opinion. Nolan, P. J., Beldock, Christ and Brennan, JJ., concur; Ughetta, J., dissents and votes to reverse the order, to sustain the writ of habeas corpus, and to award custody of the child to the petitioner father, with the following memorandum: In this proceeding to obtain the custody of an infant not yet three years of age the petitioner is the father. Respondents are the maternal grandparents and the mother of the child. The infant resides in the home of the maternal grandparents in Commack, Suffolk County. The mother works as a nurse at Kings County Hospital in Brooklyn and does not reside in the home of her parents where the child lives, but visits on her days off once a week. Respondents have not appeared or filed a brief on this appeal. The parents were married July 21, 1957. The mother was then attending the Southampton School of Nursing. After the marriage they resided with the paternal grandparents in Connecticut until shortly before the birth of the child on October 4, 1958, when the mother went to the home of her parents. She went there under a mutual agreement that the baby would stay at the home of the maternal grandparents until the mother completed nursing school. She felt that under such an arrangement it would be easier for her to visit the baby. It was further arranged that upon her graduation the parents would live together with the baby. However, at the expiration of this time and after the mother had graduated, she went

to Brooklyn, leaving the child with her parents. Since then she has refused to return to her husband on the sole ground that she no longer loves him and could not be decent to him, which she says would create an unfavorable atmosphere in which to rear the child. Consequently, the infant is still with the maternal grandparents. They permit the father to visit with the baby only when one or both of them (the grandparents) are present. They have forbidden the father's parents or sisters to see the baby and have refused permission to the father to take the child out or to his home in Connecticut, where he resides with his parents in a large house surrounded by one and a half acres of ground and where the child would live with him, should he be awarded custody. At the time of their marriage the parents of the child had agreed that their offspring would be raised in the Catholic religion, and this child was baptized in that faith. The mother now states that it is no longer her intention to raise the child in the Catholic faith, as she and her mother know more about the Lutheran Church. Native Latvians, neither the mother nor the maternal grandparents have become American citizens, although they have been in this country ten years. Latvian is the language spoken in the home and the child is being taught that language rather than English, because, the grandmother testified, "My home language is Latvian." In March, 1960, the father wrote to the maternal grandfather and asked permission to take the child for a week in April. The grandmother replied that she was answering the letter because " it seems to me you do not realize that my husband has little or nothing to say about this whole matter." She refused permission for the father to take his child and further stated that if he wished to visit he should let her know when he was coming — "I cannot receive you unexpected. And come alone if you please * * * you have to understand this too. And believe that is the best I can do for you." No finding of unfitness has been made against the father and there could be none. The record inevitably forces one to conclude that the child is in the actual custody and control of the maternal grandparents, not of the mother. It is obvious that the mother abandoned her husband without just cause — there is neither evidence nor claim of any misconduct on his part which would justify such action. It is also quite apparent that the maternal grandmother is dominating her daughter and is the moving force behind this whole sorry situation. It is fundamental that the rights of the parents to the custody of their children are superior to those of all other persons, and that custody of a child is not to be transferred from its natural parent for any but the gravest reasons (*Matter of Bachman* v. *Mejius,* 1 N Y 2d 575; *People ex rel. Portnoy* v. *Strasser,* 303 N. Y. 539; *Matter of Gambale* v. *Riganti,* 2 A D 2d 863). As between the natural parents, no prima facie right is in either (Domestic Relations Law, § 70), although where a child of tender years is concerned the courts lean to awarding custody to the mother. In the instant case, the mother is not exercising her right to custody which is, in fact, in the maternal grandparents subject to her weekly visits. If she prevails, she will continue to exercise only a nominal custody. The marital history is a factor to be taken into consideration, and usually, other things being equal, custody will not be awarded to a parent who is responsible for the broken marriage (*Harrington* v. *Harrington,* 290 N. Y. 126; *Ullman* v. *Ullman,* 151 App. Div. 419). Here, so far as can be ascertained from the record, the mother is wholly at fault and responsible for the situation in which the parties find themselves. Of course, even in such case the welfare of the child is the primary consideration, and it is open to the mother to convince the court that she and her parents should have custody. No such showing has been made here; indeed, the evidence clearly indicates a contrary conclusion. It is true that the mother expresses a hope

that at some future time she, either alone or with her parents, will be in a position to establish a home for herself and the child. But this case should be decided on the facts as they now exist; should there be a change in circumstances the matter may always be reviewed. It is my opinion that upon this record the writ should be sustained and that custody of the child should be awarded to the father.