Justine Wise Polier, J.
The Edwin Gould Services for Children petitions, pursuant to section 384 of the New York Social Services Law, for guardianship of three brothers, with the right to place them for legal adoption, subject to approval by the court to which adoption proceeding will subsequently be presented. This court has jurisdiction to hear and determine this petition under subdivision (c) of section 115 of the Family Court Act and subdivision 5 of section 384 of the Social Services Law.[1]
Counsel for the natural mother moved to dismiss the petition pursuant to CPLR 3211 (subd. [a], pars. 2, 7 and 8) and on the ground that a finding pursuant to section 384 of the Social Services Law would deprive the respondent mother of due process of law under the United States Constitution.
In regard to the first issue raised, counsel for the respondent contends that this court has no jurisdiction of the subject matter, since the mother is a nonresident, nondomiciliary of New York. The subject of this action, however, is the children. They were born in New York City and were residing in New York when the mother authorized placement of the two older children in 1967 and when she left the youngest child with an unrelated neighbor in New York in 1968. The children have continued to reside in New York in placement under the auspices of the petitioner and have been continuously supported by the New York Department of Social Services.
In the absence of specific provisions in the Family Court Act or rules adopted by the Administrative Board of the Judicial *177 Conference, the procedure must be in accord with the provisions of the CPLR to the extent they are suitable.[2]
By the mother’s authorization of the placement of the two older children and her leaving of the third child, she engaged in a transaction under which her children have continuously received support and care in New" York, and she has been relieved of the obligation of their support. Such acts on the respondent’s part must be regarded as acts subjecting her to the exercise of personal jurisdiction by this court. (CPLR 302.) Certainly the respondent’s conduct more than fulfills “ the minimum contacts theory ”, which the United States Supreme Court held: “ requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘ traditional notions of fair play and substantial justice ’.” (International Shoe Co. v. Washington, 326 U. S. 310, 316). In the practice commentary, McKinney’s Consolidated Laws of New York (Book 7B, CPLR 302, p. 61) it is noted: “ Thus, as in so many other areas of the law, a rule of reason was brought to bear on jurisdiction. * * * While the case involved a foreign corporation, its reasoning applies with equal vigor to nonresident individuals.”
The court has jurisdiction under CPLR 301, which provides under the heading, Jurisdiction over persons, property or status, that ‘ ‘ A court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore.” Personal service as rendered in the instant case is authorized under CPLR 313.
In a custody proceeding, when the wife had taken an infant to Australia and was personally served in Australia, special appearance by counsel was denied on the ground that the infant was domiciled in New York. Personal service in Australia had been held to be sufficient pursuant to section 235 of the Civil Practice Act in a previous decision in the controversy by the Supreme Court and such decision had been affirmed unanimously by the Appellate Division. (Matter of Kades, 25 Misc 2d 246. See previous decision, Matter of Kades, 23 Misc 2d 222, 223-224, affd. without opn. 10 A D 2d 919.)
Moreover, in Kades (supra, p. 248) the court held that in exercising jurisdiction, the court was not proceeding on the basis of whether the mother or father had a cause of action. *178 “Instead, as parens patriae, it is assuming jurisdiction and exercising the powers inherent in that jurisdiction, for the sole purpose of protecting the infant ” (Finlay v. Finlay, 240 N. Y. 429; Matter of Lang, 9 A D 2d 401, 405; Matter of Bachman v. Mejias, 1 N Y 2d 575, 581). In Finlay (supra, p. 431) the court held that jurisdiction of the State to regulate custody of infants found within its territory does not depend on the domicile of its parents stating, “ It has its origin in the protection that is due to the incompetent or helpless ”. (See, also, Matter of Kernan, 247 App. Div. 664, affd. 272 N. Y. 560.)
The present petition seeks a determination of the custody and guardianship of three children residing within the State. This court acting as parens patriae for the purpose of protecting the infants and pursuant to section 384 of the Social Services Law and section 661 of the Family Court Act has jurisdiction. The mother has appeared with counsel, following personal service as required by the CPLE and the preceding Civil Practice Act. Motion to dismiss for lack of jurisdiction or on the basis of requirements of the Civil Practice Act is therefore denied.
Counsel for the mother further contends that although the residence of the children in New York may give this court jurisdiction over their custody, it cannot proceed under section 384 of the Social Services Law. This contention is based on the ground that action nnder section 384, like actions under article 6, may lead to the termination of parental rights but fails to provide for the safeguards provided under article 6, and therefore deprives the mother of constitutional due process.
All decisions determining custody of children affect the parental fights of living parents. While permanent neglect may not constitute abandonment, abandonment as defined under section 384 is an extreme form of permanent neglect. Therefore, in exercising its jurisdiction in these proceedings the court held itself governed by the requirements of article 6, to which respondent’s conns el points as providing the constitutional safeguards to which the mother is entitled.[3] The mother received notice of the petition; she was personally served; on her appearance she was advised of her constitutional rights and referred for counsel; she was given several adjournments to prepare for trial. No procedural rights of due process have been denied, *179 nor is it even alleged that they have been denied. Thus any omission in the provisions for procedural due process in the Social Services Law have been corrected by application of the legislative provisions in article 6 of the Family Court Act and the procedure as executed in the instant case. (See Hayman v. Morris, 37 N. Y. S. 2d 884.) Motion to dismiss on the ground that section 384 fails to provide due process, is denied.
To permit a mother to defeat the right of the courts in this State, on the basis of her removal to another State while leaving her children in New York, to hear and determine what is in their best interest, would violate the responsibilities of the courts as parens patriae and public policy as set forth in the laws of this State.
We turn now to the merits of the issues raised by the petition and the record. Stipulation was entered by counsel for the petitioner, and counsel for the Commissioner of Social Services, and the mother, that the sole evidence to be considered by this court is to consist of the record kept by the petitioner in the regular course of business (exclusive of psychological and psychiatric reports on one child), the facts as stipulated to by counsel, and the authorization for placement of the two older children executed by the mother on April 14, 1967.
This court finds by a preponderance of the evidence that:
1. The respondent is the mother of three sons born out of wedlock.
2. The mother authorized the Bureau of Child Welfare to place the two older boys, Malcolm (born February 23, 1962) and John (born December 10, 1963), after they had been admitted to St. Luke’s Hospital with a diagnosis of aspirin overdose on April 13, 1967.
3. These two boys were kept in temporary shelter in accordance with the mother’s request that temporary care be given until after she advised her social worker at the hospital that she agreed to long-term foster care in mid-December of 1967.
4. On January 12, 1968 the youngest child, Richard (born October 26, 1965) was admitted to St. Luke’s Hospital with a diagnosis of aspirin overdose. After his release to the mother she failed to keep three follow-up appointments for the child.
5. On May 6, 1968, when the mother requested the return of the two older children and was advised by the social worker at the hospital that she was not ready to assume their care, she replied that then “ they might as well have all the children.”
6. Four days later, the mother left the youngest child with an unrelated neighbor; when she failed to return and her rela *180 tives would not accept Richard, he was placed with the petitioner which had the two older h ;ys in care.
7. The petitioner placed the two older hoys in a foster home on April 23, 1968, and the youngest boy in the same home on May 15, 1968. The three children have remained in this same foster home since placement.
8. The mother failed to keep appointments with the case worker twice in August, 1968. She moved without disclosing her new address, and it was unknown until April 6, 1969 when a maternal aunt gave it to the petitioner. In June, 1969 the mother again failed to keep an appointment, although she had expressed a wish to get them back in three years. All contact with the mother ceased from May 25, 1969 to December 7, 1970, a period of over 18 months. A letter to the mother dated October 20, 1969 was returned, marked ‘1 moved. ’ ’ This was the second time the mother moved without advising the petitioner. This time the maternal aunt disclaimed knowledge of the mother’s whereabouts. When a new address was secured from the mother’s sister, the mother called but again failed to keep the two appointments scheduled in March, 1970. No communication, no gift, no contact emanating from the mother followed the breaking of these appointments.
The record thus establishes not only by a preponderance of the evidence but by uncontroverted evidence that the mother failed to provide adequate care for the children while in her custody, and that she has abandoned them in every sense of the word since May 25, 1969.
Finding of abandonment is made. The three children who are the subjects of this consolidated action are committed to the Edwin G-ould Services for Children for custody and guardianship with the right to place them for legal adoption, subject to approval by the court to which adoption proceedings will be presented.

. Under subdivision 5 of section 384, “if the parents have abandoned such child for the period of six months then next preceding, the guardianship of the person and the custody of such child may be committed to an authorized agency by order of the surrogate or family court judge of the county in which such authorized agency has an office for the regular conduct of business, on such notice to such persons as the surrogate or judge may in his discretion prescribe.”

. Family Ct. Act, § 165.

. Legislation to spell out the jurisdiction of the Family Court in actions referred under section 384 of the Social Services Law, and rules by the Administrative Board of the Judicial Conference, would clarify procedures.